## MATHILDE ROTHENBERGER et al. v. ELIZA GARRETT et al., Appellants.

### Division Two, December 14, 1909.

1. **TAX SUIT: Assessment Against Owner.** A tax judgment is against the property, and not personal, yet the tax is required to be assessed against the owner, if known, and the law looks to him for payment of the tax, and he is a necessary party to a suit to enforce the lien of the State.

2. **————: Suit Against Record Owner: Trustee Under Will.** Where the title was vested by a probated will, creating an active trust, in a trustee, and he died leaving descendants, and thereafter all the beneficiaries by proceedings *ex parte* in the circuit court had another trustee appointed, and this last trustee was living at the time the suit for taxes was brought against the beneficiaries and the deceased trustee, the judgment and sale convey no title. The last trustee was both the record and actual owner.

3. **TRUSTEE: Appointment: Ex Parte.** The trust created by the will being an active one, and the trustee having died, the circuit court has power to appoint another trustee upon the application therefor by all the beneficiaries *ex parte*, and such appointment cannot be attacked collaterally. [Distinguishing Brandon v. Carter, 119 Mo. 572, and Hitch v. Stonebraker, 125 Mo. 128.]

4. **TAX DEED: Wrong Name.** The will named as beneficiaries Julia Pfeiffer, who afterwards married Schultz, and Mathilde Pfeiffer, who afterwards married Rothenberger. *Held,* that an order of publication to Julius Pfeifer and Mathilde Pfeifer was no notice to either.

5. **————: No Allegation of Ownership.** Where the petition in the tax suit does not allege, and the judgment does not find, that the beneficiaries under the will are the owners of the land, but on the contrary the averment is that a deceased trustee is the owner, the tax proceeding is void.

6. **INSTRUCTIONS: Trial by Court.** Where the case was tried by the court without a jury, there is no occasion for reversing the judgment because erroneous declarations of law were given.

7. **RECEIVER: Ancillary.** The appointment of a receiver to collect and hold the funds for the true owners pending the suit to determine to whom the land belongs, is merely ancillary, and no error can be predicated thereon if the judgment on the main issue is affirmed.

Appeal from St. Louis City Circuit Court.—*Hon. Jesse A. McDonald,* Judge.

AFFIRMED.

*E. P. Johnson* for appellants; *M. Hilton pro se.*

(1)  On the marriage of John Huser and Mathilde Pfeiffer, widow of Edward Pfeiffer, said will vested an absolute equitable title to said premises in the widow Mathilde Pfeiffer (now Rothenberger), his daughter Julia, and his son Gustav, in equal parts. Cornwell v. Wulff, 148 Mo. 542. (2) On the death of L. D. Carroll, trustee named in the will, the legal title passed to his heirs with the same trust attached to the property, and the ex parte application for the appointment of a trustee to succeed him under Sec. 8683, R. S. 1889 (Sec. 4580, R. S. 1899), was unauthorized. It is illegal and void, and the objection to it should have been sustained, said section having no application to the appointment of a trustee under a will. Hitch v. Stonebraker, 125 Mo. 128; Perry on Trusts, 343, 344, 277 and 282. Such estates are alienable and subject to the same rules as similar legal estates. Cornwell v. Orton, 126 Mo. 355. (3) The petition does not state any facts that authorized the appointment of a receiver, only that defendants were collecting the rents, but if it had, no evidence to justify the appointment was heard. Besides, Frances Hughes, the owner of the property and a resident of the State, had no notice of the application for the appointment and was not served with any

kind of process in the case until more than five months after the appointment of Frederick Gottschalk as receiver; therefore, the motion to set aside the order appointing him should have been sustained. Rees v. Andrews, 169 Mo. 177; State v. American Lead & Baryta Co., 184 Mo. 647. (4) It is conceded that the proceedings in said back tax case of State ex rel. v. Carroll, resulting in the deed by Pohlman, sheriff, to Rachel Y. Jacobs, have no validity against L. D. Carroll, trustee, as he was dead when the suit was commenced; therefore, any mistake in the publication of notice as to him is immaterial. Nor is any validity claimed for them except as against defendants Mathilde Pfeiffer (Rothenberger), Julia Pfeiffer and Gustav Pfeiffer, who were then the equitable owners of the premises, none of the other defendants having any beneficial interest in them. It is immaterial how many of the latter kind of defendants there were, or mistakes in regard to them. The judgment is not a decree of title, is severable, and good against all of the owners properly summoned or notified, and void as to the remainder. Stevenson v. Black, 168 Mo. 549, 558, 560; Eminence Land & Mining Co. v. Land & Cattle Co., 187 Mo. 420; Walker v. Mills, 210 Mo. 684. (5) The respondents are attempting to attack collaterally the back tax judgment, which the law does not permit them to do. McDermott v. Gray, 198 Mo. 266; Evarts v. Land & Lumber Co., 193 Mo. 433; Brawley v. Ranney, 67 Mo. 280; Wellshear v. Kelley, 69 Mo. 343; Charley v. Kelley, 120 Mo. 134. The judgment cannot be thus attacked, even if there had been nothing in the petition to lay the foundation for it. O'Reilly v. Nicholson, 45 Mo. 160.

*A. H. Engel* and *Bishop & Cobbs* for respondents.

(1) After the death of Carroll, the trustee named in Pfeiffer's will, the circuit court had authority to appoint a successor, and the appointment of Gottschalk

vested in him the legal title to the property in question. Hitch v. Stonebraker, 125 Mo. 128; Brandon v. Carter, 119 Mo. 572. (2) A trustee of real estate is a necessary party to any suit involving the title to that property. Erisman v. Erisman, 59 Mo. 367; Siemers v. Kleeburg, 56 Mo. 169. (3) The tax deed from Pohlmann to Jacobs, was void, and passed no title: The petition on which the judgment was entered, and the judgment itself, shows that "L. D. Carroll is trustee for Mathilde Pfeiffer, widow, Julia Pfeiffer, Gustave Pfeiffer, Edward Pfeiffer, deceased, and Sophia Krampanitzki, and as such is the owner" of the real estate described. Nowhere in the petition or judgment does it appear that Mathilde Rothenberger, Julia Schulz, or Gustave Pfeiffer were made defendants or were owners, or claimed to be owners of the property. L. D. Carroll died long before this suit was brought. Judgment against a dead man is void.

GANTT, P. J.—This is and was a suit commenced in the circuit court of the city of St. Louis to quiet the title to a certain lot in the city of St. Louis, in city block number 55, and having a front of nineteen feet on the west line of Second street and a depth of one hundred feet, and specifically described by metes and bounds.

The common source of title of all the parties is Edward Pfeiffer, whose will was probated March 2, 1868. The portion of said will material to a proper determination of this suit is in these words: "All of my real estate, consisting of a house and lot in the city of St. Louis and of the undivided half of a farm in Jefferson county, both hereinafter more particularly described [to-wit, as in the petition], I give and bequeath unto my friend L. D. Carroll of the city, to have and hold to himself, his heirs and assigns forever, in trust for the following purposes: during all the time that my beloved wife, Mathilde, shall remain unmarried and my

widow, she shall have the sole use and benefit thereof and said trustee is to hold said property for the purpose to let her enjoy and use the income thereof and if she then should die my widow, she may dispose of the same by will, or in default thereof, it shall go to her heirs; but in case my said wife Mathilde should not continue to be my widow, then and in that case, the said trustee shall hold said real estate from the moment of the second marriage of my said wife Mathilde, *in trust* for her, my daughter, Julia, and my son, Gustav; and said equal third interest of my wife shall be held by her said trustee, free from the interference, control or interest of any husband she may have.''

The evidence further discloses that on July 15, 1868, the widow, Mathilde, married John Huser. He died, and she married Frank Rothenberger on September 4, 1874. On January 9, 1901, Gustav Pfeiffer and his sister Julia Schulz gave to their mother a deed to all their interest in said lot. Thereafter on January 14, 1901, Mathilde Rothenberger conveyed an undivided half interest in said lot to Milton C. Brown, and on April 8th Brown conveyed said half interest to William J. Brasfield, and on January 14, 1903, Brasfield deeded said one-half interest to Henry Kaiser, one of the plaintiffs. In April, 1870, L. D. Carroll, the trustee named in the will, died, and his estate was fully administered and finally settled in the probate court of the city of St. Louis. At the April term, 1894, of the circuit court of St. Louis, Mrs. Mathilde Rothenberger, Gustav Pfeiffer, her son, and Julia Schulz, her daughter, being the sole owners of the beneficial interest in said lot, filed their petition, duly verified, for the appointment of a trustee to succeed to and execute the trusts in said will in the place of L. D. Carroll, deceased, and the said court appointed Frederick Gottschalk trustee to execute the trusts in said will. In their petition in this case, which was originally filed May 16, 1903, it was alleged that Eliza Garrett and Manetho Hilton claimed

to own some right, title, interest or estate in said lot, but in fact they had no title thereto. Afterwards on 25th of February, 1905, plaintiffs filed an amended petition in which they made Frances Hughes a party defendant, and alleged that since the filing of the original petition there had been placed on record a deed purporting to have been executed by defendant Eliza Garrett to said Frances Hughes to all of said lot, but that said deed in fact transferred no interest therein and only clouds the title of plaintiffs to said property; that said defendants Garrett, Hilton and Hughes, or some of them, were collecting the rents of said lot and appropriating them to their use; that said Manetho Hilton is the real party who claims said property and defendants Garrett and Hughes are merely his representatives; that these parties claim some interest in said lot by virtue of or through a certain deed executed by one John H. Pohlmann, as sheriff of St. Louis, to one Rachel Y. Jacobs, dated December 11, 1900, and recorded in book 1574 at page 505 of the Records of Deeds in Recorder's office of the City of St. Louis; that said deed is void and of no effect and the claims made by defendants thereunder are without right and a cloud upon plaintiff's title.

A number of other defendants were made parties for the reason various mortgages and deeds of trust had been made to them, which plaintiffs alleged were satisfied in fact but not of record. Order of publication was made notifying non-resident defendants and unknown defendants, upon proper allegations in the petition, which was verified.

Defendant Hilton answered and disclaimed all interests, so likewise did defendant Garrett. On December 6, 1905, defendant Frances Hughes entered her appearance and filed an amended answer to the amended petition. After making specific denials of the most of the allegations of the amended petition, she avers that she claims an interest in said lot by virtue of the deed

executed by Pohlmann as sheriff on December 11, 1900, to Rachel Y. Jacobs, and alleges that it is valid and conveyed the title to said Jacobs and said title by mesne-conveyances from said Jacobs has become vested in her, the said Hughes, for valuable consideration. She alleges she is the equitable and legal owner of said lot and prays the court to so decree her to be.

Plaintiffs filed a reply denying all the new matter alleged in the several answers.

I. As both parties claim title through Edward Pfeiffer and the plaintiffs deduce their title through the last will and testament of Edward Pfeiffer and his devisees, the controlling question in the case is as to the validity of the tax deed made by the sheriff to Rachel Y. Jacobs, and the judgment upon which that deed is based.

By section 9303, Revised Statutes 1899, it is provided that all actions for back taxes, commenced under the provisions of that chapter, "shall be prosecuted in the name of the State of Missouri at the relation and to the use of the collector *and against the owner of the property.*" It has been ruled that while these tax judgments are against the property and are not personal, still the tax is assessed against the owner, if known, and the law looks to him for payment of the tax and he is a necessary party to a suit to enforce the lien of the State. [Gitchell v. Kreidler, 84 Mo. 472.] It was also ruled in that case that the beneficiary in a deed of trust, who has not been made a party to such tax proceeding, is not foreclosed, but may redeem the land from the sale of the taxes. [Stafford v. Fizer, 82 Mo. 393.] Since the decision in Vance v. Corrigan, 78 Mo. 94, it has been deemed sufficient for the collector to bring the suit against the apparent or record owner of the land. [Harrison Machine Works v. Bowers, 200 Mo. l. c. 231-2; Land Co. v. Bippus, 200 Mo. l. c. 697 and cases therein cited; Manwaring v. Lumber Co.,

200 Mo. l. c. 727.] The doctrine is deducible from these cases that a purchaser at a tax sale under a judgment for taxes under our Act of 1877, acquires a good title as against the holder of an unrecorded deed from such apparent owner (Allen v. Ray, 96 Mo. 542; Payne v. Lott, 90 Mo. 676; Crane v. Dameron, 98 Mo. 567), unless the evidence discloses that at the time the collector brought his suit to enforce the lien of the taxes, or at the time of their purchase the purchasers at such tax sales, know or have notice that the title has been transferred from such apparent record owner to some other person, who is not made a party to said tax proceedings. [Watt v. Donnell, 80 Mo. 195; Stuart v. Ramsey, 196 Mo. l. c. 415.] In Powell v. Greenstreet, 95 Mo. 13, it was held that it must be taken as settled law that purchasers at these sheriff's sales made on execution in tax suits acquire only the right, title and interest of the defendants in the tax suit. The title acquired by such proceedings is derivative. [Blevins v. Smith, 104 Mo. 583.]

Now in this case, the record showed that the legal title to the land in suit was in L. D. Carroll as trustee under the will of Edward Pfeiffer. It also appears that at the time this tax suit was brought under which the defendant claims the title, L. D. Carroll was dead and his heirs were not made parties defendant in said suit. It is perfectly apparent, under the decision of this court in Jaicks v. Sullivan, 128 Mo. l. c. 186, that the action was not brought against the record owner in so far as the title was vested in L. D. Carroll. He was not the owner of the lot at that time. As to him and his heirs the proceeding was void. [Williams v. Hudson, 93 Mo. 524; Bollinger v. Chouteau, 20 Mo. 89; Graves v. Ewart, 99 Mo. 13; Crosley v. Hutton, 98 Mo. 196.] The defendant therefore, cannot assert title to this land by virtue of the action against Carroll, who was dead at the time of the commencement of the tax suit. Under the will of Edward Pfeiffer the trust

created in Carroll was an active one, and upon his death it was entirely proper that another trustee should be appointed to execute the trust in the will, and the record discloses that Mrs. Rothenberger and her children applied to the circuit court for the appointment of a trustee in place of Carroll, the deceased, and that the court did appoint Frederick Gottschalk trustee on April 9, 1894, and he was not made a party to the tax suit brought in 1897. The petition in the tax case in alleging the ownership of the lot states: ''Plaintiff further states that L. D. Carroll is trustee for Mathilde Pfeiffer (widow), Julia Pfeiffer, Gustav Pfeiffer, Edward Pfeiffer, deceased, and Sophia Krampanitzki, and as such is the owner of the following described real estate.'' The evidence further showed that the tax suit was brought against Mathilde Pfeiffer, widow, when it appears that she had been married in 1868 to John Huser, and after his death she was again married to Frank Rothenberger in 1874, and by this name she was in possession of the house and lot in suit and collecting the rents therefrom when the tax suit was brought against her. Julia Pfeiffer, the daughter mentioned in the will, as early as 1894, had intermarried with one Schulz, but she was notified in the order of publication by the name Julius Pfeifer.

Defendants recognizing the weakness of their proceeding against L. D. Carroll, after his death assail the appointment of Mr. Gottschalk as trustee in his stead, as unauthorized and void because they say the proceeding was *ex parte* and no notice given to adversary parties, and in support of this contention they cite us to Brandon v. Carter, 119 Mo. 572, and Hitch v. Stonebraker, 125 Mo. 128. Apparently counsel for the defendants rely upon the statement made in Brandon v. Carter, 119 Mo. 572, that the statute providing for the summary appointment of trustees in certain states of fact (R. S. 1889, secs. 8683 and 8684; now

secs. 4580 and 4581, R. S. 1899) does not apply to trustees under wills, and the repetition of that statement in Hitch v. Stonebraker, 125 Mo. l. c. 139; but a careful reading of Brandon v. Carter, supra, will show that the plaintiff in that case was appointed a trustee under the will of Dr. Jacobs, in lieu of Mr. Price, who had been appointed by the will but had declined to accept the trust, and the appointment of Brandon was upheld upon the inherent power of courts of chancery to appoint a trustee when the original trustee has died or refused to accept the trust, it being a maxim of chancery jurisprudence that a court of equity will never permit a trust to fail for want of a trustee. Moreover, while the remark was made in ' Hitch v. Stonebraker that our statute did not apply to the appointment of trustees in trusts created by will, yet an examination of that case will show that Mrs. Collier, in her will, had given $5,000 to her son as trustee for St. Charles College. The son died, and by his will appointed Governor Trusten Polk successor in trust. Polk died without naming a successor. In an ex parte proceeding by the curators of the college, the court appointed Johnson as successor. This court in passing upon the question therein presented, said: "Upon the death of Polk, it (the trust fund) was, in contemplation of law, in the hands of his representatives. In order that it might not remain there and the trust fail, the circuit court in the exercise of its inherent, equitable jurisdiction, had the right to appoint a successor to him in that trust."

It will be noted that in that case the court had another and a different proposition before it, and that was the removal of a trustee and the appointment of another one in his stead. And it is to this point that this court cited authority showing that a court of chancery in removing and substituting trustees could not act arbitrarily. [1 Perry on Trusts, sec. 277; 1 Daniell's Chan. Pl. and Pr. (6 Amer. Ed.),

*p. 247.] But the circuit court in this case had no question of removal before it, but a case wherein the trustee nominated in the will had died and his estate finally settled and no question between him and the beneficiaries under the will and all the beneficiaries joined in a petition for the appointment of a new trustee. In this condition of affairs there were no adversary parties, all the parties interested in this real estate at that time were before the court and the court had the power to appoint a new trustee to carry out the terms of the will and this appointment was not open to attack in this collateral proceeding.

It is plain, we think, as conceded by the defendant, that the tax proceeding as against Carroll had no validity whatever to pass the legal title to Jacobs. As to Mrs. Schulz the proceeding was wholly invalid. The only notice given to her of the tax proceeding was by order of publication which described her as Julius Pfeifer. By no sort of legal intendment can it be held that an order of publication to Julius Pfeifer is a good notice to Julia Schulz, and equally unavailing was the publication to Mathilde Pfeifer to bring in Mrs. Mathilde Rothenberger. But to our minds there is a still more substantial and valid reason why the tax proceeding in this case was not sufficient to divest the title of the devisees of Edward Pfeiffer, and that is this: nowhere in the petition or in the judgment in this tax case, is it alleged or found that Mrs. Rothenberger or Mrs. Schulz or Gustav Pfeiffer were owners of or claimed to be owners of any part of the property described in the petition. They were not even mentioned as beneficiaries. On the contrary, the substantive averment was that L. D. Carroll was the owner of said real estate, and it was his interest which was sought to be affected by that suit and there is nothing to indicate that it was intended to bind the interests of the plaintiffs in said real estate, save and except through the action against Carroll.

II.  As to the errors assigned upon the declarations of law given by the court, inasmuch as there was no jury to be influenced by these instructions, there can be no occasion for reversing the judgment, even though those declarations were incorrect, but a careful examination of them fails to disclose any error.  As to the contention that the circuit court improperly struck out the answer of the defendant Frances Hughes, it must suffice to say that while the court did say he would strike out said answers unless counsel furnished him with some satisfactory proof that the alleged Frances Hughes was not a myth, and some evidence as to who she was and as to where she could be found, as a matter of fact, her answer was not stricken out and no exception was taken to the court's remark at the time, and the final decree shows that the cause was finally determined upon the amended petition, *answers* and replies.

III.  The assignment of error predicated upon the appointment of a receiver is without merit inasmuch as the judgment of the circuit court has been affirmed. The funds were collected by the receiver and held for the real owners of the property and that proceeding was merely ancillary to the main case.

In our opinion the circuit court was amply justified in rendering its decree for the plaintiff, and its judgment is therefore affirmed.

*Burgess* and *Fox, JJ.,* concur.