C. L. KEATON, Appellant, v. EMMA JORNDT et al.

Division Two, June 23, 1914.

1. **SECOND APPEAL: Judicial Notice of Former Record.** The Supreme Court, upon a second appeal in the same case, will judicially notice the record appearing on its files of a former appeal—so far as to notice the existence of the earlier proceeding and what was done in the premises, the legal relations of the parties at different times and their good faith, the identity of the subject-matter and such like matter, but not the evidence adduced at the trial from which the former appeal was taken.

2. **REVERSAL WITH DIRECTIONS: Matters for Consideration on Retrial.** Where upon a former appeal in the same case the judgment was reversed and the cause remanded with directions to the trial court to enter up judgment for defendants, vesting in them the title to the interests of certain defendants in the lands in suit acquired by them by virtue of a certain sale for taxes, and to enter a further decree in favor of plaintiff for whatever interests of other defendants he may have acquired by certain deeds of conveyance, the decision further reciting that the "said several interests was not determined by the circuit court and we are not sufficiently advised to determine

the same," the duty of the trial court was to determine those interests and to consider no other question.

3. **TAX SUIT: Proper Defendant.** The suit for taxes should be brought against the owner of the land; and if the collector does not know who the real owner is, he may look to the records of title and bring the suit against the person who by them appears to be the owner, and though such apparent owner is not in fact the true owner (for instance, if such apparent owner has conveyed by an unrecorded deed), the title of the true owner will pass by a sale bottomed upon such suit. But that rule is adopted for the protection of the collector, and it does not apply where he knows the true owner. If the collector knows the apparent record owner is not the true owner, or if the purchaser at the tax sale knows that the defendant in the tax suit is not the true owner, no title passes to the purchaser at the sheriff's sale.

4. ———: ———: **Against Deceased Apparent Record Owner.** But under the statutes as they were prior to the amendment of 1909 to Sec. 11498, R. S. 1909, a suit against the apparent record owner who was dead at the time the suit was brought would have been utterly void. Where the apparent record owner is dead the suit can be brought only against the real owner.

5. **TAXES: Life Tenancy and Remainder: Duty Inter Sese.** As between the life tenant and remainderman the life tenant is bound to pay the taxes. But that is an obligation *inter sese*, and one with which the State, when it proceeds to collect the tax, has nothing to do. When the life tenant fails to pay the taxes and both he and the remainderman are sued and the land sold, the State's lien upon the fee is foreclosed.

6. **ERRONEOUS DECREE AGAINST RESPONDENTS.** An erroneous decree against defendants who do not appeal, which gives them less than the evidence shows them to be entitled to, will not be reversed.

7. **TAX SUIT: Foreign Unrecorded Will: Interest Covered By Sale.** Where the will of the nonresident record owner devised the land to his wife for life with remainder to his three daughters, and said will is not recorded in the county where the land lies, the suit for taxes, in the absence of knowledge by the collector of its contents, should be brought against testator's widow and heirs at law, as if he died intestate; and if so brought, and the land is sold, the purchasers, who do not have either actual or constructive knowledge of the will or its contents, take whatever interest the defendants in the suit have as devisees, though they were sued as heirs.

Keaton v. Jorndt.

8. ———: **Life Tenant With Power of Sale: Exercised After Tax Suit: Relation.** Where the will gave the land to testator's widow for life, with remainder to his three daughters, with power in her to sell and convey the fee at any time, and a tax suit was brought against all the devisees, and failed as to two of the daughters because they were improperly named therein, an election by the widow to sell, after the sheriff had attempted to sell the whole, did not relate back to the probate of the will prior to the tax sale, and did not prevent the sheriff's deed from conveying the fee of the one remaining daughter; and therefore the wife's subsequent deed conveyed only the tentative interests of the two daughters not named in the tax suit. Neither the sale for taxes, nor anything other than the voluntary exercise of her power to sell by the wife, prior to the tax sale, would serve to execute the power and cut out the remaindermen.

9. ———: **Actual Owner in Possession: Notice.** If the real owner, though not the apparent record owner, is in actual possession of the land, then notice of the actual condition of his title is imputed to the collector at the time the suit is brought, and to the purchaser at the time the sale is made.

Appeal from Butler Circuit Court.—*Hon. W. S. C. Walker,* Judge.

AFFIRMED.

*J. L. Fort, W. C. Keaton* and *Phillips, Lentz & Phillips* for appellant.

(1) The first question that presents itself on this appeal is, whether the former decision of this court is *res adjudicata,* and therefore binding upon the court in the present appeal, as contended by the defendants. The rule of law is that questions of law determined on a former appeal are concluded only when considered thereafter with reference to the same state of facts. If the essential evidence is thereafter supplied upon a new trial, and a new state of facts appear, the prior ruling is by no means conclusive. Rutledge v. Railroad, 123 Mo. 131; Parker-Washington Co. v. Transit Co., 147 S. W. 191; Williams v. Butterfield, 214 Mo. 427; May v. Crawford, 150 Mo. 525; Bird v. Sel-

lers, 123 Mo. 32; Crispen v. Hannovan, 86 Mo. 187; Timber Co. v. Railroad, 145 S. W. 195; Strottman v. Railroad, 128 S. W. 195; Finnigan v. Railroad, 149 S. W. 628; Smith v. Adams, 130 U. S. 167; Gardner v. Railroad, 150 U. S. 349; Bucher v. Railroad, 125 U. S. 555; Coal Co. v. Patting, 210 Ill. 344; Railroad v. Bentz, 108 Tenn. 670. If the judgment and opinion of this court in the former appeal is conclusive of the rights of the party it must be on the principle of *res adjudicata*. A judgment of an appellate court, which reversed the judgment of the court of original jurisdiction and remanded the cause to this court for further proceedings, is not a final judgment. A judgment of reversal is only final when it also enters or directs the entry of a judgment which disposes of the case. Smith v. Adams, 130 S. W. 167; Gardner v. Railroad, 150 U. S. 349; Bucher v. Railroad, 125 U. S. 555; Coal Co. v. Patting, 210 Ill. 342; Paving Co. v. Field, 132 Mo. App. 636; Railroad v. Bentz, 108 Tenn. 670; Garrett v. Greenwell, 92 Mo. 120. In the former opinion in this case, the court neither entered a judgment, nor directed the trial court to enter a judgment, which disposed of the case. On the contrary, it expressly directs the trial court to ascertain what the interests of the several parties in the land are. This is one of the vital issues in the case at bar, both when the case was in this court on appeal, and the circuit court. The circuit court is required to find what interest the several parties had in and to the land in controversy. This can only be done by a retrial of the case. The will of Nathan T. Thurber was before the court and the construction to be placed upon that will was one of the vital issues in the case as presented, on the former appeal. Yet the court failed entirely to give a construction of that will or to in any manner declare what the effect of that will was. Consequently, the question of the effect of that will upon the title to the land in controversy, was not passed

upon by this court, and the whole question is still open
for review.   (2) The will of Nathan T. Thurber gives
to Carrie E. Thurber a life estate, with the added
power to sell and dispose of the fee at any time during
her natural life.   She did exercise the power, and sold
the entire estate, her life estate as well as the fee, to
Campbell.   The deeds to Campbell conveyed to him the
estate in fee, and effectually cut off and extinguished
the estate in remainder.   So that whenever she saw
fit to and did exercise the power given to her by the
will, whether before or after the tax judgment sale,
it extinguished the estate in remainder whether held
by the children of Nathan T. Thurber, or by the gran-
tees in the tax deed.   24 Am. & Eng. Ency. Law (2
Ed.), 449; Grace v. Perry, 197 Mo. 562; St. Louis L.
& B. Ass'n v. Fuller, 182 Mo. 104; Garland v. Smith,
164 Mo. 15; Evans v. Folk, 135 Mo. 403; Greffet v. Wil-
liams, 114 Mo. 120; Lewis v. Pittman, 101 Mo. 291;
Harbison v. James, 90 Mo. 425; Russell v. Eubanks,
84 Mo. 86; Reinders v. Cappleman, 68 Mo. 490; Rube
v. Barnett, 12 Mo. 6.   (3) The sale and deed made in
pursuance of the tax judgment did not, and could not,
give to the purchaser any further or greater interest
than the children of Nathan T. Thurber had in and
to the land.   The purchaser, even if the sale had been
valid, stepped into the shoes of the defendants and took
just what interest they had in the land, which was
an estate in remainder, which was liable to be defeated
if the holder of the life estate saw fit to exercise the
power of sale given to her by the terms of the will.
Watt v. Donnell, 80 Mo. 197; Powell v. Grantstreet,
95 Mo. 15; Allen v. Ray, 96 Mo. 415; Machine Co. v.
Bowers, 200 Mo. 230.   (4) The judgment of the court
disregarded the will.   There was no evidence to sus-
tain the finding of the court, which must have been
that Nathan T. Thurber died intestate.   This will, when·
probated, passed the title to the devisees from the
date of the death of Thurber.   Rodeny v. Landon, 104

Mo. 646; Drake v. Curtis, 8 Mo. 646; Broadstreet v. Kinsola, 76 Mo. 66; Haile v. Hill, 13 Mo. 618; Bright v. White, 8 Mo. 426. And this is so whether the will was recorded in the State or not.

*Wammack & Welborn* for respondents.

(1) The taxes for which this land was sold became delinquent during the lifetime of Nathan T. Thurber, the common source of title. It is true he left a will, but that will was not recorded in Stoddard county, until six years after this tax judgment had been obtained. The officers of the county, charged with the enforcement of this tax lien, cannot be held to have any knowledge of this will in the absence of it being recorded in Stoddard county. They had no notice that there was a will, and therefore sued the widow and the heirs of Nathan T. Thurber. R. S. 1909, secs. 567, 568. Before a foreign will can be admitted in evidence or become a muniment of title, a certified copy of said will and the probate thereof, must be recorded in this State in accordance with the law governing domestic wills. Stevens v. Oliver, 200 Mo. 513; Keith v. Keith, 97 Mo. 228; Vansykel v. Bean, 110 Mo. 593; Fenderson v. Tie & Timber Co., 104 Mo. App. 290; Graves v. Ewart, 99 Mo. 17. (2) Where special directions have been given to the lower court by the appellate court upon remanding a cause, it is out of the power of the lower court to open the cause for a new trial. Allen v. Chouteau, 74 Mo. 56; Bridge Co. v. Stone, 194 Mo. 175; Spratt v. Early, 199 Mo. 491; Smith v. Kiene, 231 Mo. 215. (3) When the tax proceeding was brought, and the land sold to satisfy the judgment, so far as the land records of Stoddard county show, Nathan T. Thurber had died intestate, the title to the property then undoubtedly rested in Carrie E. Thurber as the widow and her three daughters as tenants in common. The officer who

brought the tax suit, and the purchaser at the tax sale, cannot be charged with constructive notice of a will which had only been recorded in Michigan. Then whatever title these various parties had to the land under the law in 1897 passed by the tax suit, if they were properly brought before the trial court. Carrie E. Thurber and Katie A. Viger were properly brought before the court, and their interests passed by the tax deed; the other parties were not before the court, according to the opinion of the Supreme Court, and their interests did not pass. Now then, what interest did pass? Minus the will, Carrie E. Thurber had the widow's dower, and Katie A. Viger an undivided one-third interest in fee, and that is what the trial court has found the defendants entitled to in this case. The revenue laws require the collector to sue the owner of land for the enforcement of the tax lien, and the courts have uniformly held that the purpose of this statute is satisfied by a suit against the apparent record owner. Where a non-resident land owner dies and no will is recorded in this State, then presumptively his heirs, according to the laws of this State, are the record owners of his property lying within this State, and they are the parties to be sued for the enforcement of the State's lien for taxes.

FARIS, J.—This is an action to determine interest under the provisions of section 650, Revised Statutes 1899 (now section 2535, Revised Statutes 1909), in the following described land situated in Stoddard county, Missouri, to-wit: The northeast quarter, the east half of the southeast quarter, the east half of the northwest quarter, and the east half of the southwest quarter of the southeast quarter, of section 4, in township 23, range 12 east.

This is the second appeal to this court in this case. A full report of all the facts, so far as it is necessary to consider them here, will be found in 220

Mo. 117, to which reference for such facts as are not herein set forth may be made.

In the former appeal the judgment below was for plaintiff, finding him to be the owner in fee of the whole of the land embraced in that action and described above herein. Upon a hearing had in Division Two of this court the judgment of the court *nisi* was reversed with directions, in the following language:

"The judgment of the circuit court, so far as it affects the title to the interests acquired by the purchaser of the interests and estates of Carrie E. Thurber and Katie A. Viger, is reversed, with directions to the circuit court to enter up a judgment for defendants vesting in them the title to the interests and shares of Carrie E. Thurber and Katie A. Viger in said lands acquired by them by virtue of said sheriff's deed under said tax judgment, and to enter a further decree in favor of plaintiff for whatever interest he may have acquired by deeds of conveyance in the shares or interests of Mary A. Lemen and Hattie E. Stone. As to what said several interests in said lands are was not determined by the circuit court, and we are not sufficiently advised to determine the same, and hence, express no opinion at this time."

From the trial of the case anew below for the most part and from the facts gleaned from the former case, the record discloses the facts to be about as follows: .

The land in suit and described in plaintiff's petition was the property of Nathan T. Thurber, a nonresident of Missouri, and in his lifetime a resident of the State of Michigan. Through said Thurber as a common source both plaintiff and defendants claim title. Thurber died at Detroit, Michigan, March 19, 1896, testate, leaving as his sole heirs at law and likewise the sole legatees under his will, Carrie E. Thurber, his widow, and Mary A. Lemen, intermarried with one Austin H. Lemen; Katie Viger, intermarried with

one E. R. Viger, and Hattie E. Stone, intermarried with one Harry L. Stone. The will of said Thurber was duly probated in Wayne county, Michigan, on April 26, 1896. By the terms of this will, after certain minor provisions not here pertinent, he gave all the residue of his estate both real and personal to his widow, Carrie E. Thurber, for and during the term of her natural life, but with full power to sell and convey and dispose of the same absolutely at her volition. A copy of this will with the probate thereof duly authenticated, was filed and recorded in Stoddard county, Missouri, on the 3d day of January, 1903. Carrie E. Thurber and others on March 27, 1902, conveyed an undivided one-half interest in the land here in controversy to one Samuel F. Campbell, and on October 13, 1903, Carrie E. Thurber, by a quitclaim deed conveyed the remaining one-half interest in said land to said Campbell. On February 25, 1904, said Campbell and wife conveyed the land in dispute to plaintiff Keaton, and this is plaintiff's chain of title, no link of which, but only the effect of which, is disputed.

The defendants claim title through a sheriff's deed based on a judgment for delinquent taxes for the years 1894 and 1895, which judgment was rendered on the 23rd day of November, 1897, and the land was sold under said judgment on the 9th of March, 1898, and passed from the purchaser at said sale by mesne conveyances to defendants, or to their ancestor. The tax proceedings, culminating in the tax sale aforesaid, were against Carrie E. Thurber, *Mollie H.* Lemen, Austin H. Lemen, Katie A. *Vigar,* Edward R. Viger, *Birdie E.* Stone, and Harry L. Stone, as heirs at law of Nathan T. Thurber, deceased. Their sheriff's deed in its averments followed these descriptions of these persons.

Since the case was here before, defendant Albert A. Jorndt has departed this life, but his proper heirs

at law have been made parties in his stead and they with the other defendants now own whatever title passed at said tax sale. Further details of the facts herein may be seen in Keaton v. Jorndt, 220 Mo. 117.

When the case was last tried and the instant record made, at the close of the case the learned trial court found and adjudged the title, estate and interests of the said parties both plaintiff and defendants, in said land, as set out in the below excerpt from the judgment, viz:

"That at the date of the sheriff's sale mentioned in the said decision and judgment of the Supreme Court, the said Carrie E. Thurber was the owner of a life estate in an undivided one-third interest in said lands and that the said Katie A. Viger was the owner of an undivided one-third interest in the fee in said lands subject to the life estate of the said Carrie E. Thurber, and at the date of the said sheriff's sale the said Mary E. Lemen and Hattie E. Stone were each the owner of an undivided one-third interest in the fee in said lands subject to the said life estate of the said Carrie E. Thurber. Pursuant to said judgment and mandate of the Supreme Court it is therefore considered, ordered and adjudged that the said plaintiff, C. L. Keaton, is the owner of an undivided two-thirds interest in and to said lands subject to the said life estate in an undivided one-third interest thereof."

From this finding and judgment the appellant, after the usual motion for a new trial, has appealed.

Upon the trial of the instant case the learned court *nisi* took the view that upon the judgment and mandate of this court the only issue left to be determined by him was the nature and extent of the several interests which these parties, plaintiff and defendants, had acquired and held in this land by the will of Nathan T. Thurber, and what portion of this interest passed by the sale for taxes in 1898.

I. This case, as the statement of facts discloses, has been here before, and touching the legal effect and **Retrial After Appeal: Law of Case.** conclusiveness of the judgment rendered herein upon such former appeal strenuous contentions are made by the appellant. He states for us his position on this point clearly, thus:

"The circuit court is required to find what interest the several parties had in and to the land in controversy. This can only be done by a retrial of the case, and as there is no limit placed upon the trial court as to the scope of the investigations, it necessarily follows that the trial court must retry the case upon all of the issues presented."

In our view of the case appellants's position on the effect of the former judgment herein is not tenable. The mandate of this court, as well as the opinion filed in the case, was offered as evidence upon the trial *nisi*. We need not stop to consider whether this was necessary or not, or whether the trial court took judicial notice of the judgment rendered here, or not. We notice it ourselves, because it is a part of the record in the case, a point, we take it, which appellant has tacitly conceded, since though the mandate was offered below, he has not seen fit to carry it forward into the record before us. Be this as it may, this court will judicially notice "the record appearing on its files of a former appeal in the same case— so far as to notice the existence of the earlier proceeding and what was done in the premises, the legal relation of the parties at different times and their good faith, the identity of the subject-matter, and the like," but not the evidence adduced upon the former appeal. [1 Chamberlayne, Ev., sec. 683; State v. Jackson, 106 Mo. 174; State v. Ulrich, 110 Mo. l. c. 355; Dawson v. Dawson, 29 Mo. App. 521.]

Turning our attention then to the opinion in this case, we note (220 Mo. l. c. 118), that it was "reversed

with directions." Looking to the judgment we see that for details and to ascertain what was done, we must turn to the opinion. The judgment so directs us when it·is content with saying that the judgment below is in all things "reversed, annulled and for naught held . . . and the said cause . . . remanded to the said Stoddard County Circuit Court for further proceedings to be had therein in conformity with the opinion of this court herein delivered." Turning back then as directed by the judgment, to the opinion and analyzing it fairly, it is pretty plain that it falls within the rule of those cases which are "reversed and remanded with directions," wherein it becomes the duty of the trial court to do those things, and those only which it is directed to do by the mandate contained in the judgment. [Atkison v. Dixon, 96 Mo. 577; Taussig v. Railroad, 186 Mo. 269; Scullin v. Wabash Railroad Co., 192 Mo. 1; Wise Coal Co. v. Zinc & Lead Co., 143 Mo. App. 587; Chouteau v. Allen, 74 Mo. 56; Stump v. Hornback, 109 Mo. 272; Fanning v. Doan, 146 Mo. 98; Hastings v. Foxworthy, 34 L. R. A. 321, and cases cited.] In the case of Chouteau v. Allen, supra, at page 59, it was said:

"When this cause was here before, we affirmed the judgment in some particulars, and reversed it in others, and remanded the cause with specific directions to govern the further steps of the trial court. Those directions have not been followed, nor our mandate obeyed. That mandate was in the nature of a special power of attorney. By it, so far as the parties to the record were concerned, authority and jurisdiction was granted to the lower court to take such steps as were ordered, and such incidental steps as were necessary to carry our mandate into execution. Beyond this, nothing. The action of the lower court in permitting Allen to amend his answer and in opening the cause for rehearing and for the trial of new issues never raised before—issues directly at variance

with and repugnant to his former issues—was altogether *coram non judice,* and, of consequence, void."

We think that a fair comparison of the judgment in this case upon the former appeal with those shown in Chouteau v. Allen, 70 Mo. 290, and Chouteau v. Allen, 74 Mo. 56; Shroyer v. Nickell, 67 Mo. 589, and Shroyer v. Nickell, 55 Mo. 264, will disclose clearly that all the trial court could do was to try the issue left untried and left undecided here for lack of evidence and data, as it was stated.

Upon the former appeal the directions were "to enter up a judgment for defendants vesting in them the title to the interests and shares of said Carrie E. Thurber and Katie A. Viger in said lands acquired by them [defendants] by virtue of said sheriff's deed under said tax judgment, and to enter a further decree in favor of plaintiff for whatever interests he may have acquired by deeds of conveyance in the shares or interests of Mary A. Lemen and Hattie E. Stone."

In the first trial, on which said former appeal was based, the Stoddard Circuit Court did not determine the respective interests of the widow and heirs of Nathan T. Thurber, because it had no occasion to do so, since it found that the deeds of Carrie E. Thurber to Campbell of March 27, 1902, and September, 1903, conveyed to said Campbell, and by mesne conveyances to plaintiff Keaton, the whole estate in all the land here in controversy. This court did not determine these interests on the former appeal for the reason that the nature and extent of the interests of Carrie E. Thurber and Katie A. Viger were not determined in the circuit court. So it is but academic to discuss whether there was or not in fact sufficient data in proof from which to determine these interests; the fact remains that this court did not determine them.

The proof in the record before us shows and we find that said Thurber died testate on March 19, 1896, leaving a widow, Carrie E., and three married daugh-

ters as his only heirs at law, viz., Hattie E. Stone, Mary A. Lemen and Katie A. Viger. It is manifest that upon the former appeal this court duly considered the tax suit and its details and the sheriff's deed bottomed thereon and its effect, and the extent of its effect on conveying title. We considered and adjudged that all title in the lands of Carrie E. Thurber and Katie A. Viger passed out of them and into defendants by virtue of such tax deed, but that such deed did not affect or pass the title of Hattie Stone or Mary Lemen. We did not undertake to say what the nature or extent of these several persons' interest so passed from them or left in them, was. That question alone we remanded back to the circuit court to be by it determined. There are at least three views to take of the nature and extent of these interests. Two of these are urged on us by the contending parties here, respectively, another one inevitably intrudes itself into the case.

We have seen that in the instant appeal, the learned court *nisi* decreed that Carrie E. Thurber's interest was a life estate in an undivided one-third of the land in controversy, and that Katie Viger had a remainder in fee in an undivided one-third thereof, subject to said life estate of Carrie E. Thurber, and that these interests passed to defendants, and that plaintiff by his mesne conveyance through Carrie E. Thurber took the undivided two-thirds of the land in fee. This is one of the views to be taken of the case, and the one taken, we think erroneously, by defendants, since they do not appeal.

II. Another theory of the case, and that urged upon us by plaintiff, who is the appellant, is that since Carrie E. Thurber took under the will a life estate with power to convert the same into an absolute estate in fee by a conveyance; and, since she did exercise this power to convey in March, 1902, and September, 1903 (four years after the sale for taxes), the

title to the whole estate passed to and vested in ap-
pellant through a sort of saltatory exercise by means
of which the title passed over or around the interven-
ing tax sale. This theory we lay by for further dis-
cussion later.

Still another theory of the case is that since by
the provisions of the will Carrie E. Thurber took a
life estate in the whole of the land, and this was the
actual status of the title at the time of the tax suit
and sale, and since her entire interest and that of
Katie passed, the defendants take (subject to an ap-
peal mayhap, which they failed to take herein) the
life estate (of Carrie) in the whole of the land and
an undivided one-third thereof in fee (Katie's inter-
est) subject to said life estate. It is fairly plain that
one of these views should prevail. The itching ques-
tion, which disposes when ruled, of the whole case, is:
Which one?

There is scant doubt that the will conferred on
Carrie E. Thurber the power at her own volition to
convert the life estate given her into a fee, and thus
to cut off the remaindermen. But she had not exer-
cised this power when the lands were sold for taxes in
1898, and did not do so for some five years thereafter.
She could have exercised such power at any time after
the death of her husband, but chose to withhold action
therein till 1902, and in the meantime the land was
sold for taxes.

When the land was sold for taxes the law simply
required that the suit for taxes should be brought
*"against the owner of the property."* [Sec. 9303, R.
S. 1899.] Who were the owners of this land when this
tax suit was brought? Time and again we have held
that this meant, in the absence of information to the
contrary in the collector, or in the purchaser at the
tax sale, he who appeared by the record to be the
owner. [Schnitger v. Rankin, 192 Mo. 35; Rothenber

ger v. Garrett, 224 Mo. 191; Ohlmann v. Sawmill Co., 222 Mo. 62; Payne v. Lott, 90 Mo. 676.]

This phase of the law is succinctly set out by Judge GANTT in the case of Rothenberger v. Garrett, supra, where at pages 197 and 198, it is said:

"By section 9303, Revised Statutes 1899, it is provided that all actions for back taxes, commenced under the provisions of that chapter 'shall be prosecuted in the name of the State of Missouri at the relation and to the use of the collector *and against the owner of the property.*' It has been ruled that while these tax judgments are against the property and are not personal, still the tax is assessed against the owner, if known, and the law looks to him for payment of the tax and he is a necessary party to a suit to enforce the lien of the State. [Gitchell v. Kreidler, 84 Mo. 472.] It was also ruled in that case that the beneficiary in a deed of trust, who has not been made a party to such tax proceeding, is not foreclosed, but may redeem the land from the sale of the taxes. [Stafford v. Fizer, 82 Mo. 393.] Since the decision in Vance v. Corrigan, 78 Mo. 94, it has been deemed sufficient for the collector to bring the suit against the apparent or record owner of the land. [Harrison Machine Works v. Bowers, 200 Mo. l. c. 231-2; Land Co. v. Bippus, 200 Mo. l. c. 697 and cases therein cited; Manwaring v. Lumber Co., 200 Mo. l. c. 727.] The doctrine is deducible from these cases that a purchaser at a tax sale under a judgment for taxes under our Act of 1877, acquires a good title as against the holder of an unrecorded deed from such apparent owner (Allen v. Ray, 96 Mo. 542; Payne v. Lott, 90 Mo. 676; Crane v. Dameron, 98 Mo. 567), unless the evidence discloses that at the time the collector brought his suit to enforce the lien of the taxes, or at the time of their purchase the purchasers at such tax sale, know or have notice that the title has been transferred from such apparent record owner to some other person, who is not made a

party to said tax proceedings. [Watt v. Donnell, 80 Mo. 195; Stuart v. Ramsey, 196 Mo. 1. c. 415.] In Powell v. Greenstreet, 95 Mo. 13, it was held that it must be taken as settled law that purchasers at these sheriff's sales made on execution in tax suits acquire only the right, title and interest of the defendants in the tax suit. . The title acquired by such proceedings is derivative. [Blevins v. Smith, 104 Mo. 583.]"

Consonant with our holdings consistently adhered to since the case of Vance v. Corrigan, 78 Mo. 94, that the words of the statute "against the owner of the property," _meant where required or necessary, "against the owner of the property as shown by the land records," the Legislature in 1909 amended the statute (section 11498) so that it now reads just as we had long construed it. But this was not the statute when the tax suit here in question was brought. It is manifest, when we read and compare carefully the many holdings on this precise question, that the above rule of construction was established for the benefit and protection of the collector, and not for the benefit of the owner of the land or him who was obligated to pay the taxes. In the absence of other information, the collector was entitled to fasten and foreclose the lien of the State upon the land by suing him who appeared from the records to be the true owner. [Schnitger v. Rankin, 192 Mo. 35; Shuck v. Moore, 232 Mo. 649; Hilton v. Smith, 134 Mo. 499; Payne v. Lott, 90 Mo. 676; Simonson v. Dolan, 114 Mo. 176; Vance v. Corrigan, supra.] But if the collector knew the real owner and sued one who while by the record appearing to be the real owner, yet was not, and the collector knew he was not, or if the buyer at the tax sale knew the defendant in the tax suit was not the real owner, although so appearing by the records to be, no title passed to the purchaser at such a tax sale. [Stuart v. Ramsey, 196 Mo. 404; Zweigart v. Reed, 221 Mo. 33; Rothenberger v. Garrett, supra; Ohlmann v. Sawmill Co., 222

Mo. 62.] But where there is no record owner shown, the true owner must be sued. [Wood v. Smith, 193 Mo. 484.] The latter case makes it fairly clear that the rule of the sufficiency, ordinarily, of a suit against the record owner is a rule for the protection of the collector, and that this rule yields always to knowledge to the contrary, to knowledge of the true facts, and of course to the true facts themselves, when it says: "The plaintiff relies upon the doctrine that the collector in instituting a suit for taxes is only obliged to look to the record of deeds to see who the owner of the property is, and that a judgment for taxes against the apparent owner conveys a good title to the purchaser at the tax sale, as against the true owner, whose deed is not recorded at the date of the institution of the tax sale. That is the doctrine in this State. [Vance v. Corrigan, 78 Mo. 94; Watt v. Donnell, 80 Mo. 195; Payne v. Lott, 90 Mo. 676; Evans v. Robberson, 92 Mo. 192; Allen v. Ray, 96 Mo. 547; Simonson v. Dolan, 114 Mo. 176; Weir v. Cordz-Fisher Lumber Co., 186 Mo. 388.] And the same rule is recognized in Moore v. Woodruff, 146 Mo. 597."

In other words, the statute says to the collector: Sue the "owner of the property." [Sec. 9303, R. S. 1899.] We have said to the collector by our construction of this section: If, however, you do not know the true owner, you may sue the record owner and the title of the true owner will pass by a sale bottomed upon such suit. [Rothenberger v. Garrett, 224 Mo. 191, and cases cited, supra.]

While as between the life tenant and the remainderman the former is bound to pay the annual taxes (Bone v. Tyrrell, 113 Mo. l. c. 188; Bradley v. Goff, 243 Mo. l. c. 102; Hall v. French, 165 Mo. l. c. 438), yet with this obligation *inter sese* the State has nothing to do. [2 Cooley on Taxation, 818, and cases cited.] If the life tenant fails to fulfill this duty, and both the life tenant and the remainderman be properly sued

and the land be sold, the State's lien is foreclosed upon the fee; for the lien of the State is upon the fee, and a fee passes by the sale 'and by the deed of the sheriff, other things being equal. [Sec. 11501, R. S. 1909; Hall v. French, supra; 2 Cooley on Taxation, 960.]

Here in the instant case, Nathan T. Thurber who appeared by the land records of Stoddard county to be the owner of the land, was dead when the tax suit was brought. The real, or true, owners at this time were Carrie E. Thurber, who in fact or as the facts then were, owned a life estate in the whole of the land, with remainder in fee in Katie A. Viger, Hattie E. Stone and Mary E. Lemen. If the collector had then sued the apparent record owner, Nathan T. Thurber, since he was then dead, a fact evidently known to the collector at the time, we need cite no authority to prove that such suit against the dead man would have been utterly void. Clearly then a suit against the record owner would have been futile. The whole trend of the cases shows that no valid action was tenable by the collector to foreclose the lien of the State for taxes, except to sue the real owners. [Wood v. Smith, supra.] This he did, or attempted to do, falling so far short thereof as may be seen in Keaton v. Jorndt, 220 Mo. 117.

The defendants have not appealed. So, if we conclude that they are entitled to at least as much interest in these lands as they took by the judgment *nisi*, we need not as a matter of duty take the time to investigate and determine, and the space to write down, whether they are not entitled to take more than the court below gave them. The will of Nathan T. Thurber was not recorded in Stoddard county until long after this sale for taxes, through which defendants claim. There is no proof of actual notice of the contents of this will either as to the collector or as to the purchasers of this land at the tax sale, and since the will was not recorded in Stoddard county at said time

it was not constructive notice to these purchasers. [Graves v. Ewart, 99 Mo. l. c. 17; Stevens v. Oliver, 200 Mo. l. c. 513; Keith v. Keith, 97 Mo. l. c. 228.] It was the duty of the Thurbers to pay these taxes, and likewise their duty and privilege (Sec. 4633, R. S. 1899), and within their power alone, to have this will recorded in Stoddard county within six months from the date of its probate. In the absence of the performance of such duty to record the will and lacking actual notice on the part of the collector of its provisions, or of its existence, he had the right to assume, as he did, that Nathan T. Thurber had died intestate and to sue his widow and heirs as such for taxes. We will see later that the discussion involves not only the correctness of the collector's acts, but also what title the purchaser took by reason of the tax sale which culminated from these acts.

The collector sued those, then, whom he believed to be the record owners by descent cast, or by inheritance according to the Missouri statute of descents. In effect those whom he sued, and in the capacity in which he sued them, were the record owners—knowledge of the will being lacking and constructive notice by recording same being likewise absent. The collector in good faith sued all persons who had an interest in the land, in such wise as that, no errors in the service occurring, the title in fee would have passed to the purchasers at the tax sale. These purchasers believed they were buying the whole title, that is to say, a fee; likewise the collector was endeavoring to sell the fee. The devisees here holding such whole title happened to be identical in names and person with the heirs of Nathan T. Thurber who were actually sued, though they were sued as heirs in the belief in good faith that they were heirs and not devisees. In such case then, did the real title which they actually possessed at the time as devisees, pass, or did that title only pass which the collector assumed they had as heirs? Clear it

is that but for the error in the order of publication as to the names of Mary A. Lemen and Hattie E. Stone, written therein as *Mollie* H. Lemen and *Birdie* E. Stone, respectively, the whole interest of all of the parties to the suit would have passed. This for the reason that the collector sued those who stood in the shoes of the record owner, in fact he sued the *record owners by descent,* if we may coin an apt, though scarcely accurate, expression. Manifestly, then by the very strongest analogy, the title passed which Carrie E. Thurber and Katie A. Viger actually had, and not that which the collector and the purchaser had every good and legal reason to believe they had. [Port Townsend v. Trumbull, 40 Wash. 386.] This for the reason, that if A, who appears by the record to be the owner of a parcel of land, is sued for taxes after he has conveyed the land to B, who withholds his deed from record either willfully or by accident or inadvertence till after sale of the land for taxes, B will lose the title which he actually has, though the collector sue A, the record owner, as the actual owner, believing in good faith that A and not B is such actual owner; and likewise the purchaser who buys at this sale for taxes in the bona-fide belief that he is getting the title of A, and not the title of B, will yet take the title of B. We hold then that by the tax sale the life estate of Carrie E. Thurber in the whole of the land as it existed in 1898, when the sale for taxes was had, and prior to her exercise of the power given her by will to convert of her own volition her life estate into a fee by a conveyance, passed to the purchaser at the tax sale. Much color, as we have seen, if not absolute certainty, is lent to this view by the express language of our statute (Sec. 9303, R. S. 1899), which was in force when the tax suit was brought and by the views expressed by a distinguished author as to who is the owner of land for the purposes of assessment and enforcing the State's lien for taxes. [Black on Tax

Titles, Secs. 106 and 173.]   The learned court *nisi* held that only her dower in the undivided one-third which she would have taken as the widow of Nathan T. Thurber, if said decedent had died intestate, passed. In this we think he was in error, but since respondents are content and have not appealed, but have accepted this finding, we are not called on to reverse the case for an erroneous finding against respondents in which they so gracefully acquiesce.

III.   Learned counsel for appellants raise other questions which we have considered, but which in our view will not aid them in any wise even should we further prolong this opinion by discussing them.   Some of these contentions would, it seems to us, utterly defeat the whole title of appellant.   For example, it is urged, as we have already stated the proposition in paragraph two, supra, that when Carrie E. Thurber, four years after the sale of the land for taxes, exercised the power of election conferred upon her by will to convert her life estate into a fee in her grantee by a conveyance, and thus defeated the contingent remainder given by the will to Katie A. Viger and others of the children of Nathan T. Thurber, such election by her had the effect of relating back to the date of the probate of the will and so converted the title conveyed to Campbell into a fee as of such date.   We need not discuss whether such would or would not ordinarily occur; the question here is did it occur as against the State when a sale for taxes intervened?   Could Carrie E. Thurber postpone and even defeat the foreclosure of the State's lien for taxes indefinitely, or so long as she desired, or so long as she should live, by inaction, or by the exercise of an election, after the State had foreclosed the tax lien?   It is but idle to say that a sale for taxes, a transfer of title *in invitum*, could serve to execute the power of conversion into a fee and cut out the remaindermen, or that ordinarily anything

short of a voluntary exercise by Carrie E. Thurber would suffice in this behalf. [Garland v. Smith, 164 Mo. 1. c. 15.] It is equally as idle to contend that a tax suit could not reach the land and cast a lien upon it, while it stood prima facie as a life estate in Carrie E. Thurber. The absurd suggestion obtrudes itself that if the conveyance of Carrie E. Thurber made in September, 1913, related back to the date of the will, it may be urged with equal force that by the same token it related back to the sheriff's sale, and since it has been held herein that whatever interest she had passed by this sale (Keaton v. Jorndt, 220 Mo. 1. c. 134), therefore the whole fee passed because of her subsequent exercise of the power given her, to convert her estate into a fee. Clearly this is not a consummation to be wished, devoutly or otherwise, by appellant, though he contends for just as illogical a theory. We think the bare statement of the proposition discloses the utter fallacy of it.

Likewise also as to the strenuous contention that she was in actual possession of the land, presumably when the tax suit was begun and when the sale for taxes was had, though the record we think falls short of showing possession as of such date. If for the sake of argument we grant her possession as of the date of such tax sale, or as of the date of bringing the suit for taxes, then notice of the actual condition of her title is imputed to the collector and to the purchaser at the tax sale, as such ownership actually then existed and as shown by the unrecorded will, prior to election to carry out the power, and it also gave notice of the power of election to convert her life estate into a fee. [Edmunson v. Alexander, 32 Neb. 562.] In such case the life estate of Carrie E. Thurber in the whole land in dispute would pass because she was properly in court and whatever interest she had did pass by the tax sale, it has already been held. [Keaton v. Jorndt, 220 Mo. 117.] The first contingency

we have seen existed for other reasons; the second super-added to appellant's doctrine of relation back as we have already seen it would likewise do for other reasons, would defeat utterly the whole estate of appellant.

It results from the conclusions reached that the case should be in all things affirmed. Let this be done. *Walker, P. J.,* concurs; *Brown, J.,* not sitting.