MINNIE I. DUVAL and M. G. FARIS v. MARY DUVAL et al., Appellants.—291 S. W. 488.

Court en Banc, February 15, 1927.

1. **JUDGMENT OF TRIAL COURT: Compliance with Decision of Appellate Court: Waiver of Variance.** Where the decision of the Supreme Court was decisive of but one point, namely, that the defendant was entitled to an undivided half interest in the land in suit, and the cause was remanded in order that judgment might be entered in accordance therewith, each party was entitled to complain of the correctness thereof; and the trial court having jurisdiction of the whole subject-matter, and having in obedience to said decision and mandate, rendered judgment adjudging that said defendant was the owner of an undivided half interest in said land, and that the plaintiffs had no right, title or interest in the land, plaintiffs, by failing to make timely objection to the entry of said judgment, waived their right to complain thereof.

2. ———: **Implied in Per Curiam Opinion: Quieting Title: Waiver: Res Adjudicata.** A per curiam opinion must be limited to its own expressed limitations; it cannot be held to include things not expressed therein, but intentionally omitted therefrom. Where it only decided that the defendant was entitled to an undivided half of the land in suit, it cannot be ruled that under the broad language of Section 1970, Revised Statutes 1919, it included by implication a decision of the rights and interests of plaintiffs. And consequently when the cause is remanded with only such opinion as a guide, the trial court, having complete jurisdiction of the subject-matter and of the parties, has authority, in the action to ascertain and determine the title, to adjudge that said defendant is the owner of an undivided half interest in said land, and that plaintiffs have no interest or estate therein, and if plaintiffs do not object to the entry of such a judgment and do not appeal, they waive their right to complain, and the judgment as to them becomes **res adjudicata.**

3. **WILL: To Childless Devisees: If Child be Living, etc.** The will devised land to a son and daughter. The son was unmarried and the daughter, after ten years of matrimony, had no children. The will says that, neither of

these devisees having any children, "the lands are given under these express conditions: That if either die leaving no living child the other shall inherit the entire lands, and if both should die leaving no child or children living, then said lands shall revert to. my estate and be divided amongst my other living children or if dead their children if any living. Said lands cannot be sold by said devisees, except for life of either, or the survivor, but if they or either of them shall have any living children then said lands shall be an absolute gift and be treated so in all respects." The son married and had a child living at the time the suit to quiet title was brought; the daughter died without children. **Held,** that, keeping in mind the intention of the testator in view of the childless condition of the son and daughter, and reconciling the inconsistent phrases, the purpose was to devise the land to them jointly, upon these conditions: **first,** if one died and a child had not been born alive to either, the other was to inherit the land absolutely; **second,** if both died and a child had not been born alive to either, the land was to revert and be divided among testator's other children; **third,** so long as no child was born alive to either, no sale of the land, except for the life of either, or the survivor, could be made by either, this restriction to continue only so long as neither had a child born alive; and, **fourth,** the will did not create a life estate in the son and daughter and a contingent remainder in a child of one of them born alive, but an estate in fee in the son and daughter as soon as a child was born alive to either, and a child having been born to the son, a conveyance by them conveyed the title to the grantee.

4. **WILLS: Inconsistent Phrases: Reconciliation.** Where a will devises land jointly to a childless son and daughter, a phrase that "if either die leaving no living child the other shall inherit the entire lands" and a later phrase that "if they or either of them shall have any living children then said lands shall be an absolute gift and be treated so in all respects" can be reconciled by construing the first to mean that if either devisee dies without issue born alive, the other having had no issue, shall inherit the land, and the second to create a fee in the devisees upon the birth of a living child to either.

5. ———: ———: ———: **Change in Words: Living Children.** A change in the words of a will, in evident harmony with its intention, for the purpose of removing a patent ambiguity which exists if it is interpreted as written, is allowable. Where the will devises lands to a childless son and daughter a clause that "if both die leaving no child living, then said lands shall revert to my estate and be divided amongst my other living children" should be interpreted to mean that "if both die without having had issue born alive, then said lands shall revert" etc; and a clause that "said lands cannot be sold by said devisees except for life of either, or the survivor," should be interpreted to mean that "in the absence of issue born alive to either, the lands cannot be sold by them, except for the life of either or the survivor."

6. ———: **Contingent Remainder: By Implication: Defeasible Fee: Restriction upon Sale.** A contingent remainder can arise only when the estate devised is definitely limited to a life estate, or absent such limitation the language of the entire will is such as to create the remainder by necessary implication. A devise of lands to a childless son and daughter upon the express conditions (a) that "if either die leaving no living child the other shall inherit the entire lands" and (b) "if both should die leaving no child living, then said lands shall revert to my estate and be divided amongst my other living children" and (c) that "said lands cannot be sold by said devisees, except for life of either, or the survivor, but if they or either of them shall have any living children then said lands shall be an absolute gift," did not create a life estate in the son and daughter and a contingent remainder in the child of the son born after the death of testator. The will did not definitely limit the devise to a life estate in the son and

daughter, and did not devise any estate to a child of either; it devised a defeasible fee to the son and daughter, with only a limitation upon its sale until a child was born to one of them, and that contingency having happened the restriction upon sale was removed, and the fee becomes fixed and absolute in them.

---

Corpus Juris-Cyc. References: **Appeal and Error,** 4 C. J., Section 3266, p. 1216, n. 96; Section 3291, p. 1233, n. 87; Section 3308, p. 1244, n. 83. **Judgments,** 34 C. J., Section 1336, p. 930, n. 20; Section 1363, p. 959, n. 27. **Wills,** 40 Cyc., p. 1386, n. 85; p. 1393, n. 13; p. 1591, n. 40; p. 1617, n. 52.

Appeal from Clay Circuit Court.—*Hon. Ralph Hughes,* Judge.

REVERSED AND REMANDED *(with directions).*

*Beardsley & Beardsley* and *John D. Taylor* for appellants; *Harris L. Moore* for unknown appellants.

(1)   The Circuit Court of Clinton County in entering the final judgment under mandate of this court in Faris v. Ewing followed the mandate of this court and entered a final judgment against the plaintiffs.   Faris v. Ewing, 183 S. W. 283; Jones v. Hoppie, 9 Mo. 173; Burgess v. Cox, 48 Mo. 278; Wenom v. Fosdick, 213 Ill. 70; Freeman on Judgments (5 Ed.) sec. 22; Hartzell v. Maryland Co., 139 Ill. App. 366.   If we have misinterpreted the *per curiam* opinion of this court in Faris v. Ewing, then it follows that the title to the undivided one-half interest in the property in controversy is still open for determination.   In no event can it be held that it was adjudged by the Circuit Court of Clinton County to be in the heirs of Mary E. Faris, nor that it was the purpose of this court to direct that such a judgment should be rendered.   Thompson v. McPherson, 124 S. W. 872; International Co. v. Clemens, 66 Wash. 620; Bellamy v. Washita Co., 25 Okla. 792; Kamman v. Barton, 23 S. D. 442; Owen v. Higgins, 113 Iowa, 735; Bury v. Smith, 8 Kan. App. 52; 4 C. J. 1216.   (2)   If the title to the undivided one-half interest in the 240-acre tract in controversy which was in Mollie R. Ewing has not been adjudicated in the case of Faris v. Ewing, it becomes the duty of this court to determine that question.   Under a proper interpretation of the provisions of the will of James Duval, and under the other agreed facts, the title to that one-half interest is vested in those who claim under the will of William N. Ewing.   Yocum v. Siler, 160 Mo. 281; Gannon v. Albright, 183 Mo. 238; Gannon v. Pauk, 200 Mo. 75; Collier v. Archer, 258 Mo. 383; Yocum v. Parker, 130 Fed. 722; Messenger v. Anderson, 225 U. S. 441; Underhill on Wills, sec. 468, p. 622.   Minnie I. Duval was a party to the suit brought in Ray County in 1898 by William N. Ewing and wife and is barred, in any event, from any claim of title here.   (4)   Minnie I. Duval, plaintiff herein, is estopped by the covenants of warranty

in the deed of trust she executed, together with her husband and others, in 1886.

*W. W. Hooper* and *Inghram D. Hook* for respondents.

(1)   Opinion of the Supreme Court in Faris v. Ewing, 183 S. W. 280.  See Sec. 2535, R. S. 1909; Sec. 1970, R. S. 1919; Ball v. Woolfolk, 175 Mo. 278; Putnam Co. Supply Co. v. Mendote Mining Co., 285 S. W. 409; Bigelow on Estoppel, p. 170; Chouteau v. Gibson, 76 Mo. 38; Freeman on Judgments (5 Ed.) sec. 639.  (2)   Judgment of the Circuit Court of Clinton County.  See: Sec. 2085, R. S. 1909; Sec. 1516, R. S. 1919; Scullin v. Railroad, 192 Mo. 1; Zeitinger v. Dry Goods Co., 309 Mo. 433.  (3)   Plaintiff Minnie I. Duval is not barred by suit brought in Ray County in 1898 by William N. Ewing and wife.  (4)   Plaintiff Minnie I. Duval is not estopped by covenants of warranty in deed of trust she executed with her husband in 1886.  Sec. 669, R. S. 1879.

WALKER, J.—This is a suit to quiet title to certain land in Ray County.  The case was tried in Clay County on change of venue, resulting in a judgment for plaintiffs, from which defendants have perfected an appeal to this court.  The statement of numerous preliminary facts, principally of record, is necessary to an intelligent understanding of the issue here involved.

James Duval, the common source of title, died testate in April, 1880.  The fifth paragraph of his will is as follows:

"I give and bequeath to my son John C. Duval and my daughter Mollie R. Ewing jointly, the following land, to-wit:  The northeast quarter and the east half of the northwest quarter of Section thirty-one (31), in the same township and range before mentioned, containing two hundred and forty (240) acres.  These lands are given under these express conditions:  That neither of these devisees having any children and that if either die leaving no living child the other shall inherit the entire lands, and if both should die leaving no child or children living, then said lands shall revert to my estate and be divided amongst my other living children or if dead their children if any living.  Said lands cannot be sold by said devisees, except for life of either, or the survivor, but if they or either of them shall have any living children then said lands shall be an absolute gift and be treated so in all respects."

The testator, who was a widower upon his death, left surviving him five sons and one daughter.  In 1883, four of his sons and their wives conveyed by quit-claim deed to John C. Duval and Mary R. Ewing the land described in the fifth paragraph of James Duval's will.  Mary R. Ewing, who intermarried with William N. Ewing,

·was the daughter of James Duval.   No children were born of this marriage.

On December 1, 1886, a daughter was born to John C. Duval and his wife, who was named Mary Ewing Duval.   On December 27, 1886, John C. Duval and Minnie I. Duval, his wife, who. is one of the plaintiffs in the instant case,· and Mary R. Ewing and William N. Ewing, her husband, executed a deed of trust, with covenants of warranty and power of sale, to the land set forth in the fifth paragraph of James Duval's will to secure a debt described therein.

At the May term, 1898, of the Ray County Circuit Court, Mollie R. Ewing and William N. Ewing, her husband, brought suit against the five sons of James Duval and their wives.   After setting forth the fifth paragraph of the latter's will they alleged that upon the birth of Mary Ewing Duval the fee simple title to the land described in the will was established in Mollie R. Ewing and John C. Duval, the devisees named therein, and they prayed for a construction of the will and a declaration vesting the fee simple title to the land in them.

All parties being before the court, a decree was entered, July 15, 1898, finding, among other things, that it was the intention of the testator to invest the fee simple title to said land in Mollie R. Ewing and John C. Duval upon the happening of the contingency in the fifth paragraph of his will expressed, viz, upon "a living child being born to either of said named parties."   It was therefore decreed and adjudged by the court that the defendants other than John C. Duval and ·his wife be divested of any and all interest under said will in said lands described in the fifth paragraph of said will, and that the plaintiff Mollie R. Ewing and the defendant John C. Duval be vested with absolute title in fee simple to the lands described in said fifth paragraph.

The deed of trust made December 27, 1886, by John C. Duval and wife and Mary R. Ewing and her husband, William N. Ewing, was, on November 7, 1898, foreclosed and the land sold under the power of sale therein contained and a deed therefor was made to the purchaser, N. F. Frazier.   On May 13, 1906, he conveyed the land to the Solitaire Mining Co., which in turn conveyed it to William N. Ewing.

In July, 1901, John C. Duval died intestate.   No· child was born to him. other than Mary Ewing Duval, who was afterwards intermarried with the plaintiff, M. G. Faris.

At the February term, 1911, of the Circuit Court of Ray County, Mary Ewing Faris brought a suit against William N. Ewing and Mollie R. Ewing, his wife, Robert Waller and the Solitaire Mining & Milling Company.   In her petition she alleges that she is the owner in fee simple  of the land described in the fifth paragraph of James Duval's will and prays the court to ascertain and determine

the estate, title and interest of the plaintiff and defendants, and that she be adjudged to be the owner in fee of said land and awarded damages for the withholding of the possession of same. Defendants William N. Ewing and Mollie R. Ewing filed separate answers, which were the same in all respects, except that Mollie R. Ewing did not claim any interest or title in the lands involved.

These answers set up the chain of title from the United States Government to James Duval for said land; alleges his death in 1880, and that by the fifth paragraph of his will he devised the land to John C. Duval and Mary R. Ewing under certain conditions, quoting that paragraph of the will. They further allege the probate of the will and its entry of record, the birth of Mary Ewing Duval, the execution thereafter by John C. Duval and wife and Mary R. Ewing and husband of the trust deed above set out, the foreclosure thereof, the vesting of title under such foreclosure in N. F. Frazier, the transfers from him to the Mining & Milling Company, and from it to William N. Ewing, and that the latter thereby became seized of an indefeasible estate of inheritance in fee simple to the land. The answer then sets out the bringing of the suit above referred to by Mary R. Ewing in the name of Mollie R. Ewing against John C. Duval and others, in January, 1898, and the entering of the final decree therein July 16, 1898, determining the title to said land in Mary R. Ewing and John C. Duval. A claim of right under adverse possession is then pleaded and the whole is followed with a prayer that the court hear and finally determine the rights, claims and interests of the parties and find that the plaintiff Mary Ewing Faris has no right, title, interest. lien, claim or demand in or to the land, and that she be enjoined and restrained from instituting any suit or action therefor.

Final decree was entered in that suit February 12, 1912, in the Ray County Circuit Court, ordering and adjudging that William N. Ewing was the owner of the absolute fee simple title in the lands in controversy and after a compliance with the formal rules of procedure. the case was appealed to the Supreme Court. A *per curiam* opinion in that case was rendered by this court, May 1, 1916, as follows:

"In the foregoing case the judges find themselves so divided in opinion that a judgment cannot be entered upon the views expressed in either of the several opinions now on file and to be handed down. In an opinion by WALKER, J., in which GRAVES, J., concurs, it is held that W. N. Ewing is entitled to all of the property. In an opinion by BOND. J., in which FARIS, J., concurs, it is held that W. N. Ewing is entitled to only one-half of the property involved. In an opinion filed by WOODSON, C. J., in the result of which BLAIR, J.. concurs, it is held that Mary E. Faris is entitled to the entire property involved.

"For the purpose of reaching a judgment in this much-litigated case, WALKER and GRAVES, JJ., while still adhering to the views expressed in the opinion of WALKER, J., consent to a judgment for one-half of the property to be vested in W. N. Ewing absolutely, and therefore concur to that extent, and for the purpose of a judgment in the result of the opinion of BOND, J. From which it follows that the judgment of the trial court is reversed and remanded, with directions that judgment be entered in accordance with this *per curiam.*" [Faris v. Ewing, 183 S. W. 280.]

REVELLE, J., the seventh member of the court, did not sit in the case.

The mandate of this court was filed in the Circuit Court of Ray County and was as follows:

"Now on this day [May 13, 1916] come again the parties aforesaid by their respective attorneys, and the court here being now sufficiently advised of and concerning the premises doth consider and adjudge that the judgment aforesaid in form aforesaid by the Circuit Court of Ray County rendered, be reversed, annulled and for naught held and esteemed. It is further considered and adjudged by the court that the said cause be remanded to the said Circuit Court of Ray County for further proceedings to be had therein in conformity with the *per curiam* opinion of the court herein delivered, and that the said appellant recover against the said respondents, her costs and charges herein expended and have execution therefor."

The venue of the case was then changed to the Clinton County Circuit Court, in which on the 26th day of September, 1917, final judgment was entered in said cause. This judgment, after reciting the death of Mary E. Faris, the plaintiff, shows that by consent of parties her husband, Melville G. Faris, and her mother, Minnie I. Duval, were substituted as parties plaintiff. This having been done, judgment was entered as follows:

"And this cause coming on for further consideration, the defendants William N. Ewing and Mollie R. Ewing present to the court the opinion and mandate of the Supreme Court of this State in this case, which have heretofore been filed in the Circuit Court of Ray County, Missouri, and by the order of said court transferred on change of venue to this court, from which opinion and mandate it appears that said Supreme Court has held in this case that plaintiffs are not entitled to recover anything in this action, but that defendant William N. Ewing is entitled absolutely to the fee simple title to an undivided one-half of the real estate in controversy.

"It is therefore considered, adjudged and decreed by the court that plaintiff take nothing by this suit and that the fee simple title to an undivided one-half interest devised by James Duval to John C. Duval in the real estate in controversy, that is, one-half of all the northeast quarter and the east half of the northwest quarter of

Section 31, Township 53, Range 27, in Ray County, Missouri, be and the same is hereby vested in said defendant William N. Ewing; and it is further ordered by the court that this cause be and the same is hereby dismissed as to defendants Mollie R. Ewing, Robert Waller and Solitaire Mining & Milling Company.''

Mollie R. Ewing died August 18, 1919, without issue.

William N. Ewing died testate in Jackson County, April 27, 1922, in possession of the land in controversy, to which he claimed to own the fee simple title and had been in the continuous possession of the same from March 10, 1910, the date of his deed as the final grantee following the conveyances of the land since the original deed of the same to the purchaser at the foreclosure sale under the deed of trust.

The suit at bar was brought by Minnie I. Duval, the widow of John C. Duval, and M. G. Faris, the widower of Mary E. Faris, who was the daughter of John C. and Minnie I. Duval. The defendants are Mary Duval and some eighty-five or more others who are alleged to have some interest in the land in controversy. E. D. Bigelow and William F. Davis, executors of the estate of William N. Ewing, deceased, are also made defendants.

The contention of the plaintiffs, respondents here, is that the fifth paragraph of the will of James Duval vested a life estate in Mary R. Ewing, the daughter of the testator, and upon her death that the fee became vested in Mary Ewing Faris, and upon her death the title passed to her sole surviving heirs, consisting of her mother, Minnie I. Duval and M. G. Faris, the relict of said Mary Ewing Faris. Under this contention the plaintiffs pray that the title to said land be determined and if plaintiffs be found to be the owners in fee that a decree be entered of record to that effect.

It is the contention of the defendants, appellants here, that under the fifth paragraph of James Duval's will, the fee simple title to the land in controversy became vested, upon the birth of Mary Ewing Duval, in Mary R. Ewing and John C. Duval; and that when Mary R. Ewing and John C. Duval and his wife, Minnie I. Duval, thereafter placed a deed of trust upon said land and said deed of trust was properly foreclosed and the title was subsequently by mesne conveyances from the original purchaser at said foreclosure sale conveyed to William N. Ewing, he became vested with the title in fee to said land.

Appellants contend further that when the Circuit Court of Clinton County entered its final judgment in compliance with the mandate of this court that plaintiffs should take nothing by their suit, this was a final judgment against them as to their claim of title to any part of or interest in this land; and further that all of the parties interested so considered it, since the plaintiffs therein did not appeal or take any other steps to have the judgment then being entered by the trial court corrected.

The plaintiffs, respondents here, to sustain their claim to a right to a recovery, further contend that the effect of the *per curiam* of the Supreme Court in the former trial of title to this land was to adopt the opinion of Judge BOND in that case, and that the substance of his opinion is that William N. Ewing was entitled only to one-half interest in the land and that plaintiffs' predecessor in title, Mary E. Faris, was entitled to the other half interest, subject only to a life estate in Mary R. Ewing.

To the contrary, appellants contend that the effect of the *per curiam* opinion is not to adopt the opinion of Judge BOND, except that part which holds that William N. Ewing is entitled to one-half of the property in dispute and to a reversal and remanding of the case, followed by the provision that the plaintiffs, Minnie I. Duval and M. G. Faris, shall take nothing in their behalf, and that this is a final judgment against them.

I. The *per curiam* opinion rendered by this court in Faris v. Ewing, 183 S. W. l. c. 287, was decisive of but one point in that case and that was the interest of William N. Ewing in the land in controversy. The two judges, GRAVES and WALKER, in concurring with Judges BOND and FARIS limited their concurrence to a determination of the interest of William N. Ewing alone, and in the reversal and remanding of the case that a judgment might be entered to that effect. Not only is this shown by the terms of the *per curiam* opinion, but from the mandate of this court filed in the Circuit Court of Ray County, and transferred, by a change of venue, to the Circuit Court of Clinton County, which mandate, so far as it is relevant here, is as follows: "It is further considered and adjudged by this court that the said cause be remanded to the Circuit Court of Ray County for further proceedings to be had therein in conformity with the *per curiam* of the court herein delivered." The judgment of the Clinton County Circuit Court, in compliance with this court's mandate, so far as concerns the question here under review, was that "William N. Ewing was entitled absolutely to one undivided one-half of the real estate in controversy and that the plaintiffs (then Minnie I. Duval and M. G. Faris) are not entitled to recover anything in this action."

The limitations of the *per curiam* opinion are clearly indicated by its terms. The conditions under which it was entered explain the reasons for these limitations. A majority of the court did not agree to either of the three opinions as written. As a concession to secure a judgment, Judges GRAVES and WALKER, while not receding from the reasoning and conclusion in the opinion by the latter, agreed that a judgment might be entered awarding William N. Ewing a fee simple title in an undivided one-half of said land, and that the case

*Limitation of Decision.*

as a consequence of this concession should be reversed and remanded that a judgment might be rendered in conformity with the *per curiam* opinion. A compliance with this opinion is shown by a reference to the mandate of this court and the judgment of the Circuit Court of Clinton County above set forth. While the entry of the judgment of the Circuit Court, and not the mandate of the Supreme Court on the determination of the appeal, is the final judgment (Mueller v. National H. & M. Co., 258 S. W. (Mo. App.) 741), a review of their essential features shows that the judgment of the Circuit Court conforms to the requirements of the mandate and embodies a complete determination of the rights of the parties and thus ex-

**Waiver.** hausts the court's jurisdiction as to the matters decided. [State ex rel. v. Bland, 189 Mo. l. c. 216, 88 S. W. 28.] The issue involved was the right of the parties to the land in question. It does not militate against the correctness of the conclusion as to the finality of this judgment, that it only vests the title in William N. Ewing, the defendant therein, to one-half of the land. Of this, upon timely complaint, he might have been heard, but in the absence of same, so far as this right under that judgment is concerned, it has been waived. [Miles v. Buchanan, 36 Ind. 490.] The plaintiffs, Minnie I. Duval and M. G. Faris, who were held not to be entitled to recover anything, could likewise have been heard to complain if they had made timely objection to the entry of the judgment; not having done so they waived that right. [Fox v. Hale, etc., Min. Co., 108 Cal. 369; Buchanan v. Berkshire L. Ins. Co., 96 Ind. 510; Mengis v. Fifth Ave. Ry. Co., 81 Hun, 480.] The requisites to its finality are present in this judgment in that it designates the parties for and against whom it is given; and it defines the relief awarded within the issues submitted. [Moody v. Deutsch, 85 Mo. 237; Boggess v. Cox, 48 Mo. 278.]

II. The interpretation of the final judgment or the extent of its application may be readily determined from the explicit terms of the *per curiam* opinion, read in the light of the conditions under which it was rendered. The concession made to Judge BOND's opinion by the judges who held that William N. Ewing was en-

**Per Curiam Opinion: Implications.** titled to all of the land, was that he was only entitled to one-half of same. Thus far did the concession go and no farther. Upon these terms the judgment was entered and there was no contention that it should be given any other meaning. To contend in the face of the plain and unmistakable words of this opinion that it was intended to include things not expressed therein, but on the contrary intentionally omitted therefrom, is to invoke the hitherto unheard of doctrine of judgment by implication. However comprehensive and remedial

the terms of Section 1970, Revised Statutes 1919, may be, under which the instant suit was brought, there is no rule of construction which will authorize the inclusion in a judgment rendered under this section, of matters not decided by the court and which were clearly not intended to be decided. Cases such as Ball v. Woolfolk, 175 Mo. 278, and Putnam Supply Co. v. Mendota Mining Co., 285 S. W. (Mo.) 409, while correctly defining the object and purpose of that statute, are wholly irrelevant under the facts in the case at bar. Likewise are quotations from texts and cases as to the construction to be given judgments. Commentaries and cases are not required to define the meaning of the *per curiam* judgment, which is explicit in its terms and unmistakable in its meaning. It speaks for itself.

In the case in which final judgment was entered in the Circuit Court of Clinton County the original parties and the issues were

**Res Adjudicata.** the same as at bar. In that case it was held that the present plaintiffs, claiming through Mary E. Faris, were not entitled to recover. They interposed no objection and sought to perfect no appeal from that judgment which finally determined their rights to the same matter they are seeking to litigate in this controversy, viz, their interest in the land devised by James Duval in the fifth paragraph of his will. These facts authorize the application of the doctrine of *res adjudicata.*

III. While conceding the finality of the judgment of the Clinton County Circuit Court as to the undivided one-half interest of William N. Ewing in the land in dispute, plaintiffs contend, notwithstanding the finding and judgment in the former suit, that they are

**Will Construed.** entitled to a decree vesting the title in them to the undivided one-half of the land in controversy to which the title was not determined in the former suit. The trial court, evidently upon the theory that Mary R. Ewing's interest in the land was limited to a life estate, held that the plaintiffs were entitled to her interest in fee in said lands. This holding necessitates a construction of the fifth paragraph of the will of James Duval. In construing this paragraph we cannot more succinctly analyze and determine its meaning than was done in the case of Faris v. Ewing, supra.

Leaving out of consideration for the time being a discussion as to the technical nature of the estate created by paragraph 5, we are confronted with what is usually the principal inquiry in the construction of a will, viz: what was the true intent and meaning of the testator? The condition of the devisees at the time of the making of the will in 1878, which was the same as that existing at the time of the testator's death in 1880, may be taken as a fair measure from which to determine the testator's meaning. His initial declaration

sustains this conclusion. After expressly bequeathing to his son, John C. Duval, and his daughter, Mollie R. Ewing, jointly, the lands described, he continues:

"These lands are given under these express conditions that neither of these devisees having any children."

This declaration is made in express recognition by the testator of the then existing fact that neither of said devisees then had children, John C. being unmarried and Mollie R., after ten years of matrimony, being childless. The succeeding portions of the paragraph further demonstrate the controlling influence that the condition of the de-visees in regard to children had upon the testator's mind in making this devise, for in the next clause it is provided "that if either dies leaving no children the other shall inherit the land." This clause means that if either devisee dies without issue born alive, the other having had no issue, shall inherit the land. Thus read, the purpose of the testator is preserved and an inconsistent construction of the devise obviated; any other would destroy the last clause of the paragraph or render it meaningless.

The next clause provides that: "And if both die leaving no child or children living, then said lands shall revert to my estate and be divided amongst my other living children or if dead their children if living."

The meaning of this clause, and the only one that can be given it which will render possible a harmonious construction of the paragraph, is the following: If both of said devisees die without having had issue born alive then said lands shall revert, etc. This changes the words, but not the evident meaning of the will, and thus removes a patent inconsistency which exists if it is interpreted as written, while if read as suggested, the controlling influence which prompted the devisee is preserved and the remainder of the paragraph is not nullified. The next clause provides that:

"Said lands cannot be sold by said devisees except for life of either or the survivor."

In harmony with the construction placed upon the preceding clauses, this clause should be read as follows: In the absence of issue born alive to either of said devisees, the lands cannot be sold by them, except for life of either or the survivor. Construed otherwise it limits the bequest to a life estate, which is not in accord with the other provisions of the paragraph, and hence not a reasonable construction. The last clause is that:

"If they or either of them" (referring to the devisees) "shall have any living children then said lands shall be an absolute gift and be treated so in all respects."

Construing this clause in harmony with the meaning we have given the preceding portions of the devise it creates a fee in the lands in the devisees upon the birth of a living child to either.

Paraphrasing, therefore, what we have heretofore said in detail in regard to the construction of this devise the testator's purpose was to give this land to the devisees named jointly, on these conditions: If one died and a child had not been born alive to either, the other was to inherit the land absolutely; if both died and a child had not been born alive to either, the land was to revert to the testator's estate to be divided among his other children, or, in other words, in the event of the death of the devisees without issue the title to the lands was to descend as authorized by law; so long as the condition of an absence of issue born alive to either of the devisees continued, no sale of said land, except for the life of either or the survivor, could be made by either devisee. This limitation on the right of sale was, in view of the other provisions, to continue only during the existence of the condition which moved the testator to make it, viz, the fact that neither devisee then had a child born alive. This conclusion is evident from the last clause, which provides explicitly that whenever either of said devisees shall have a living child the preceding limitation shall cease and the title shall become absolute.

At the expense of repetition it is necessary to a clear understanding of this case that the contentions made in regard to the meaning of paragraph five be more minutely considered.

It is contended that the will created a life estate only in the devisees with a remainder in fee in their child or children, and as plaintiff is the only child born to either, that she takes such remainder, subject to the life estate of the devisee Mollie R.

**Contingent Remainder.** Ewing. In the absence of any provision that the land devised is to go to plaintiff, if a remainder exists it must arise by express implication and this can only be done if the estate of the devisees is definitely limited by the will to a life estate, or, absent such express limitation, that the language of the entire will is such as to create by necessary implication this remainder in plaintiff. An implication necessary to establish a remainder in her should not only show that the testator intended the child or children to have the land, but in addition that the original devisees were to have no more than a life estate. Considered alone, this clause: "Said lands cannot be sold by said devisees except for life of either or the survivor," lends countenance to the contention as to the creation of a life estate; but we are not authorized, under any rule of interpretation, to so consider it. A construction of this clause which will enable us to intelligently determine the meaning and purpose of the testator demands that this limitation on the sale of the land be considered in connection with other portions of the paragraph. Immediately succeeding the limitation is the following: "But if they or either of them shall have any living children then said lands shall be an absolute gift and be treated so in all respects."

The wording of this clause is explicit and to our mind its meaning is unmistakable; it not only imports but creates a fee, and thus modifies the limitation on the right of sale, which must, as we have before stated, be read to mean that it is only to continue operative so long as neither devisee has a child born alive.

No other portion of the paragraph, except the limitation on sale, imports other than a fee; and when this limitation is construed as we have indicated, even it does not import otherwise. While the contingency of both devisees dying without issue born alive might have defeated the fee, the possibility of its occurrence was removed by the birth of plaintiff, and there being nothing in this clause which can reasonably be said to sustain the conclusion that the testator intended to create a life tenure, we are authorized, as before indicated, in concluding that the estate created in the two devisees constituted a defeasible fee which ripened into an absolute title upon the birth of plaintiff.

**Defeasable Fee.**

Thus panoplied with title, the devisees were authorized in executing the deed of trust upon the lands to secure the payment of the note evidencing the loan made to them, and upon default in the payment of same the foreclosure and sale under the deed of trust divested the devisees of their title to the land, and upon the subsequent purchase of the same by William N. Ewing he became seized of all of the title of devisees therein.

We find, therefore, that the plaintiffs, Minnie I. Duval and M. G. Faris, have no interest in the undivided one-half of the land described in the fifth paragraph of James Duval's will, the title to which was not determined in the *per curiam* opinion and judgment rendered in Faris v. Ewing, 183 S. W. 287, but that the title to said land was vested in William N. Ewing, and upon his death, which has occurred since this suit was brought, the same is vested in his executors, E. D. Bigelow and William F. Davis, defendants herein, who are clothed with the title to said land under the will of said William N. Ewing for the purposes therein mentioned.

The judgment therefore of the Circuit Court of Clay County is reversed and this case is remanded that a judgment herein may be entered as provided in this opinion. All concur, except *Graves, J.,* absent, and *Gantt, J.,* not sitting.