HAROLD J. ABRAMS, Trustee of the Estate of LAKEWOOD SECURITIES Co., a Corporation, Plaintiff-Appellant, v. OREON E. SCOTT, Individually, and as Trustee Under Deed of Trust Dated February 18, 1933, Recorded in Book 1238, Page 38, in the Office of the Recorder of Deeds of St. Louis County, Missouri, as Trustee Under Deed of Trust Dated July 3, 1937, and Recorded in Book 1476, Page 115, in the Office of the Recorder of Deeds of St. Louis County, Missouri, LOLAII F. STEED, SAM F. DOTY, MANTON M. SCOTT, FIRST NATIONAL BANK IN ST. LOUIS, a Corporation, UNITED CHRISTIAN MISSIONARY SOCIETY, a Corporation, and the UNKNOWN HOLDER OR HOLDERS of Notes Secured by Deed of Trust Recorded in Book 1238, Page 38, of the Recorder of Deeds of St. Louis County, Missouri, and the UNKNOWN HOLDER OR HOLDERS of Notes Secured by Deed of Trust, Recorded in Book 1476, Page 115, of the Office of the Recorder of Deeds of St. Louis County, Missouri, Respondents, LAKEWOOD PARK CEMETERY ASSOCIATION, Defendant-Appellant.—No. 40397.—211 S. W. (2d) 718.

Court en Banc, April 12, 1948.

Rehearing Denied, May 27, 1948.

*Edward K. Schwartz* for plaintiff-appellant.

*Ivon Lodge* for Lakewood Park Cemetery Association, defendant-appellant.

940

*Cobbs, Logan, Roos & Armstrong* by *Wm. H. Armstrong,* and *Taylor Sandison* for Oreon E. Scott, Sam F. Doty and Lolah F. Steed, *Alexander, Ausmus & Harris* by *Ralph L. Alexander* for United Christian Missionary Society, *Bryan, Cave, McPheeters & McRoberts* by *Thomas S. McPheeters, Sr.,* for First National Bank in St. Louis, respondents.

[719] TIPTON, J.—This is an appeal from the judgment entered on our mandate between the same parties. The opinion is reported in 355 Mo. 313, 196 S. W. 2d 278 and it affirmed the judgment on the cross-appeal, "otherwise the cause is reversed and remanded for further proceedings consistent with this opinion." The facts con-

cerning the entire controversy may be found in our opinion, supra. However, we will very briefly restate the essential facts.

In 1920 John Mayer owned 240 acres of land in St. Louis County, Missouri, which he conveyed to Thomas J. Crinnion. Crinnion gave Mayer notes totalling $117,819.00, secured by a deed of trust on the land. The deed of trust provided for partial releases upon the payment of $1,000.00 an acre to the beneficiary. Crinnion conveyed the land to the Fairmont Securities Company, subject to the deed of trust. The Fairmont Securities Company caused an engineering firm to lay out and plat approximately 200 acres of the land as a cemetery. This was called "General Plan Lakewood Park Cemetery" and the plat was filed in March, 1921, showing thirty-three sections. Sections 2 and 3 had been previously platted and subdivided into burial lots. Before 1925 sections 4, 5 and 7 were subdivided into burial lots and these sections were all released from the deed of trust. In November, 1920, Fairmont Securities Company entered into an agreement with the Lakewood Cemetery Association in which the former company agreed to plat portions of the land for cemetery and burial grounds and to deed the improved roadways to the Cemetery Association. The [720] Association agreed to maintain the cemetery and handle the perpetual care fund. The cemetery was to receive the proceeds of the sale of certain lots to create the fund for perpetual care. In 1924 the land was transferred from Fairmont Securities Company to Lakewood Securities Company, subject to the deed of trust.

Mayer granted the company several extensions on the notes secured by the deed of trust but in 1929 demanded payment. Respondent Scott was president of the company at that time and finally took up the notes. In 1933 he caused a successor trustee to execute the power of sale and foreclosure the deed of trust. Scott became the actual purchaser. The trustee's deed covered all the land in the "General Plan" as well as the tract of land outside the plan, except sections 2, 3, 4, 5 and 7 which Mayer had previously released from the deed of trust.

On the day of the sale Scott caused a $60,000.00 note, secured by a deed of trust on all of the foreclosed property, to be executed. Subsequently, that note was transferred to the United Christian Missionary Society. He also caused a $100,000.00 note secured by a second deed of trust on the foreclosed property to be executed and that note was transferred to the First National Bank.

In October, 1941, the Securities Company filed a voluntary petition in bankruptcy and was adjudged a bankrupt. The trustee was authorized to file "a plenary action in any court of competent jurisdiction" to determine if the power of sale contained in the deed of trust already mentioned was void because the land had been dedicated to public cemetery purposes.

The trial court held that the land in "General Plan of Lakewood Cemetery" had been dedicated as a cemetery and for that reason the trial court set aside the foreclosure of the land involved in the "General Plan." This ruling was based on the theory that the power of sale in a deed of trust on cemetery property is void. The court cancelled the notes and deeds of trust held by the Bank and the Missionary Society but it held that the remainder of the land which was south of First Street was not a part of the cemetery and the foreclosure sale as to it was valid.

After the mandate of this court was received by the trial court, the plaintiff-appellant filed a motion designated "Motion for Leave to File Amended Petition Etc," and the Lakewood Park Cemetery Association filed a motion designated "Motion of Lakewood Cemetery Association to Allow Further Proceedings."

These motions were overruled and thereafter the trial court entered the judgment here appealed from. In brief, the judgment vested in the purchaser at the foreclosure sale those lands involved in the proceedings described in the decree as "First," making such lands subject to the cemetery use and excepting therefrom lands previously released from the deed of trust, that is, lots 2, 3, 4, 5 and 7. The judgment likewise vested in the purchaser at the foreclosure sale those lands described in the decree as "Second." This was the land south of First Street and was involved in the cross-appeal when this case was here on the first appeal. All titles so vested are subject to the subsequent deeds of trust of respondents Missionary Society and First National Bank in St. Louis.

The appellants contend that the opinion and mandate of this court constituted a general remandment, vesting the lower court with full jurisdiction and discretionary power to decide the issues and adjust the equities between all the parties. The respondents contend that our opinion and mandate constituted directions to the trial court to enter a particular judgment.

Our mandate reads, "that the said judgment on the cross-appeal of Harold J. Abrams, as Trustee of the Lakewood Securities Company, a Corporation, bankrupt, in form aforesaid, by the said Circuit Court of St. Louis County rendered, be affirmed and stand in full force and effect." (This is the land not embraced in the "General Plan" and is referred to in the present appeal as "Second.") It reads further "that the remainder of the said judgment be reversed, annulled and for naught held and esteemed, and that the said cause be remanded to the said Circuit Court of St. Louis County for further proceedings to be had therein, in conformity with the opinion of this Court herein delivered." (This refers to the land embraced in the "General [721] Plan" and is referred to in the present appeal as "First.")

In the case of Murphy v. Barron, 286 Mo. 390, 228 S. W. 492, 1. c. 494, we said:

"The words 'for further proceedings in accordance with this opinion' added nothing which would not have been necessarily implied had they been omitted. Every case which is remanded is remanded 'for further proceedings,' whether those words are used or not, and such further proceedings are expected to be 'in accordance with' the opinion rendered."

To the same effect, see Sheppard v. Wagner, 240 Mo. 409, 144 S .W. 394; Wilcox v. Phillips, 260 Mo. 664, 169 S. W. 55; and Adams v. Adams, 350 Mo. 152, 165 S. W. 2d 676. These cases hold that under the mandate and the opinion the remandment was a general one. However, in the case of Keaton v. Jorndt, 259 Mo. 179, 168 S. W. 734, the first judgment had been reversed "for further proceedings to be had therein in conformity with the opinion." But a reading of the opinion clearly shows the reversal and remandment was with directions. In Prasse v. Prasse, 342 Mo. 388, 115 S. W. 2d 807, we said that "a mandate from an appellate to a trial court has been held to be in the nature of a special or limited power of attorney. By it authority and jurisdiction is granted to the lower court to take such steps as are directed."

It follows that whenever an appellate court reverses and remands the judgment of a trial court, the appellate court does so with directions. Those directions are determined from the mandate and the opinion of the appellate court.

■ We will examine our original opinion and determine if the trial court properly followed our directions when we reversed and remanded the original judgment in this case.

We said in the original opinion: "The substantial questions involved in the merits of this appeal are, first, whether the land was a cemetery and, second, if so the legal effect of that fact upon the principal deed of trust and its power of sale and third, irrespective of whether the foreclosure was void or valid, the respective rights of all parties to the land."

In answer to the first question we held that all the land embraced within the "General Plan" north of First Street was a cemetery. In ruling this point we said: "Other circumstances, to be considered with the platting, 'active measures;' manifesting an intention to set apart and dedicate this tract of land as a burial place are that the whole tract was held out to lot purchasers as a part of a cemetery. It was contemplated, as sections were sufficiently developed, that other sections would be opened in the future, subdivided into burial lots and actually devoted to sepulcher. This was indicated by the literature used in selling lots and by the general appearance and use of the property as it was viewed by lot purchasers. There was the agreement between the Securities Company and the Cemetery Asso-

ciation, and the pervading purpose of perpetual care and maintenance. There was the use made of the drives and the structures on the premises. In short, in view of all the facts and circumstances and so far as the present action is concerned, the land embraced within the 'General Plan,' north of First Street as the court found, had been set apart as a cemetery.''

The ''General Plan'' included sections 2, 3, 4, 5 and 7 as well as all the rest of the land north of First Street. This constituted the cemetery.

''The purchaser must buy a cemetery with its restrictions and limitations. The owners of burial lots and friends and relatives of the buried dead, and to an extent the public, have interests to be protected.'' United Cemeteries v. Strother, 332 Mo. 971, 61 S. W. 2d 907, l. c. 909. Perpetual care was provided for by the agreement between the Securities Company and the Cemetery Association. This agreement must be protected by the purchaser under the peculiar facts of this case.

The effect of our holding as to the second question is that a cemetery sold under a power of sale in a deed of trust is valid, provided the land sold is continued to be used as a cemetery. In ruling this point, [722] we said: ''. . . it should be noted that a power of sale in a deed of trust is a lawful provision . . . . . . . It is specifically authorized and recognized by statute. . . . Indubitably, the usual and ordinary rules of real property law are modified once land is devoted to cemetery purposes. Jackson, Cadavers, p. 242. However, there are no common law rules which prohibit the encumbrance of cemetery property, neither, on the other hand, are there any rules which prohibit the devotion of land to cemetery purposes merely because it has been mortgaged. Jackson, Cadavers, p. 250. Our statutes do not contain any special provisions relating to the mortgaging of cemeteries nor do the statutes authorizing and recognizing powers of sale in deeds of trust contain any exceptions in the instance of mortgages on cemeteries. . . . *We think, however, in the circumstances of this case, that the power of sale in this deed of trust was not void.* [Italics ours.] Further, we think that what the court meant, [referring to the Strother case and others cited]' as it plainly indicated, was that as long as the property remained dedicated to cemetery purposes it could only be transferred, whether by power of sale or other conveyance, as and for a cemetery and 'was no longer subject to unrestricted sale for commercial purposes.' ''

Appellants base their contention that we held the trustee's sale voidable on the following language in our opinion, ''at most the foreclosure sale was merely voidable or subject to disaffirmance.'' This language was used to answer an argument that a deed of trust on a cemetery may not be foreclosed under a power of sale. We said

that if this were true a cemetery may not be foreclosed under a power of sale, yet such a foreclosure would not be void but, at most, voidable. There can be no doubt that we ruled the sale of the property dedicated as a cemetery under the power of sale in the deed of trust valid, but the purchaser must continue to use the land as a cemetery.

In regard to the third question we decided, which was in reference to the equities between the parties, our ruling was as follows: "Having so dealt with the subject matter of this litigation and with one another, in recognition of the principal deed of trust on the one hand and the cemetery on the other hand, the equities of the situation are that the parties are accordingly bound, on one side by a cemetery and on the other side by a deed of trust."

To recapitulate, we held all the land embraced in the "General Plan" north of First Street had been dedicated in its entirety as a cemetery. Of course this included sections 2, 3, 4, 5 and 7 as well as land not then set apart for burial. It by necessity included the agreement between the Fairmont Securities Company and the Lakewood Cemetery Association executed in November, 1920. We held that the sale under the deed of trust vested title in the purchaser at that sale subject to its prior dedication for cemetery purposes as shown by the "General Plan" and that equitably all parties are bound by a deed of trust on one side and a cemetery on the other. We further held that the land south of First Street vested title in the purchaser at the foreclosure sale not subject to any cemetery restrictions.

We hold that the reversal and remandment in our previous opinion and mandate was one with directions and not a general remandment. The trial court failed to follow our opinion when the court entered the judgment that ignored the rights of the Lakewood Cemetery Association under its agreement entered into in 1920. The judgment by the trial court is set aside and the trial court is directed to enter a new judgment in conformity with this opinion. All concur.