James H. DALTON and Leona I. Dalton,
Plaintiffs-Respondents,

v.

D. A. JOHNSON, Defendant-Appellant.

No. 7874.

Springfield Court of Appeals.

Missouri.

Nov. 11, 1960.

See, also, Mo.App., 319 S.W.2d 66;
Mo., 320 S.W.2d 569.

Douglas & Douglas, Neosho, for appellant.

James L. Paul, Pineville, for respondents.

McDOWELL, Judge.

This is an action in equity wherein plaintiffs seek to enjoin and restrain defendant from destroying a fence built by plaintiffs along the east edge of an easement claimed to have been established in favor of plaintiffs as a result of the mandate of the Supreme Court of Missouri, dated February 25, 1959. The trial court found the issues for plaintiffs and in its judgment restrained and enjoined defendant from destroying such fences and for costs. From this judgment appellant appealed.

Plaintiffs' petition for injunction alleged, inter alia, that by virtue of a decision of the Supreme Court they acquired an easement over defendant's land approximately 20 feet in width and 200 feet in length upon a portion of the southeast quarter of the southeast quarter of section 6, township 22,

range 33, belonging to defendant, for the purpose of watering livestock.

That on February 25, 1959, the clerk of the Supreme Court certified said transcript and judgment to the Circuit Clerk of McDonald County and that on April 7, 1959, said mandate was entered of record in the office of said Circuit Clerk, (a copy of the mandate is attached to the petition as exhibit (A) and made a part thereof).

It alleged that thereafter plaintiffs erected a fence along the east side of said easement for the purpose of enjoying the use and benefits thereof and that on the third day of September, 1959, defendant destroyed said fence and advised plaintiffs that he would destroy any other fence so erected.

The prayer was for an order restraining defendant from violation of the mandate of the Supreme Court.

The mandate, dated February 25, 1959, omitting caption, reads: "Now, at this day come again the parties aforesaid, by their respective Attorneys and the Court here being now sufficiently advised of and concerning the premises doth consider and adjudge that the judgment aforesaid, in form aforesaid by the said Circuit Court of McDonald County rendered be reversed, annulled and for naught held and esteemed and that the said appellants be restored to all things which they have lost by reason of the said Judgment. It is further considered and adjudged by the court that the said cause be remanded to the said Circuit Court of McDonald County for further proceedings to be had herein in conformity with the opinion of this court herein delivered; and that the said appellants recover against the said respondent their costs and charges herein expended and have execution therefor (Opinion filed)."

So far as the record discloses the trial court took no action in said cause. The only thing that was done was the recording of the mandate by the Circuit Clerk.

The law is stated in 5B C.J.S. Appeal & Error § 1958, p. 529, that:

"The 'mandate' of the appellate court, * * * is the order issued by an appellate court on the decision of a cause on appeal * * * directing the action to be taken or the disposition to be made of the cause by the lower court. It is the formal advice and order of the appellate court whereby its judgment is communicated to the lower court; its official directive. It is in the nature of a special unlimited power of attorney by which authority and jurisdiction are granted to the lower court to take such steps as are directed.

"Such an order is not itself a decree, but its office is to communicate the decision and directions of the appellate court to the lower court, and to return to the court below the proceedings which have been brought up by the appeal; and, except as the mandate itself may otherwise provide or require, on its issuance or filing in the lower court, that court is reinvested with jurisdiction,

"§ 1959. Since the judgment of an appellate court is not self-executing, it must be certified or remitted back to the lower court for execution; and it is generally required that there be a mandate or other order of remand issued by the appellate court in order to reinvest the lower court with jurisdiction after the rendition of judgment on appeal."

In State ex rel. McGrew Coal Co. v. Ragland, 339 Mo. 452, 97 S.W.2d 113, it was held that an appeal from a judgment, the lower court lost jurisdiction and the Supreme Court acquired jurisdiction pending appeal. On page 115 of 97 S.W.2d, the court stated:

" * * * When the case was appealed the court below lost and this court acquired jurisdiction pending the appeal, * * *. The right to execute the judgment was arrested, and whether it might ever be executed was dependent upon what disposi-

tion this court might make of the cause. * * * No proceeding can be had in the lower court until the mandate has been filed in such court, or at least issued * * *. Mandate denotes the judgment, as shown above, or the judgment and order, issued by an appellate court upon the decision of an appeal * * *. Under the statute (Mo. St.Ann. § 1069, p. 1369 [V.A.M.S. § 477.-030]) and under the practice of this court, a certified copy of the opinion accompanies the mandate. In certain instances—for example when the judgment is reversed and the cause remanded with directions to proceed as directed in the opinion * * *, and in other conceivable situation where the opinion might properly be considered— the opinion by such reference made to it becomes pro tanto incorporated with the judgment or mandate, which then constitutes a limited 'power of attorney' to the court below. But in such cases, and many like them in that respect, they are expressly distinguished from 'simple reversals and remands,' as they are termed. The obvious distinction lies in the fact that the opinion in this latter class serves no interpretative function or aidful purpose. The judgment is plain, definite, certain, and leaves no judicial act to be done by the court below; and only leaves to the clerk the ministerial duty to file and docket the judgment of this court. * * *"

In State ex rel. Kansas City v. Public Service Commission, Mo.Sup., 228 S.W.2d 738, 741 [4], the court held that: "A mandate of an appellate court serves the purpose of communicating its judgment to a lower court. It has been described as an 'official mode' of communication. It is not a judgment or decree but a notification of a judgment. 38 C.J. 956; 55 C.J.S. [pp.] 659, 660; 5 C.J.S. Appeal and Error § 1958, p. 1487; Argeropoulos v. Kansas City Rys. Co., 201 Mo.App. 287, 212 S.W. 369, 372."

It was stated in Duval v. Duval, 316 Mo. 626, 291 S.W. 488, 491, 492 [2, 4] that: "While the entry of the judgment of the circuit court and not the mandate of the Supreme Court on the determination of the appeal is the final judgment * * * a review of their essential features shows that the judgment of the circuit court conforms to the requirements of the mandate and embodies a complete determination of the rights of the parties and thus exhausts the court's jurisdiction as to the matters decided * * *."

In Abrams v. Scott, 357 Mo. 937, 211 S. W.2d 718, 721 [1, 2], the court stated: " 'The words "for further proceedings in accordance with this opinion" added nothing which would not have been necessarily implied had they been omitted. Every case which is remanded is remanded "for further proceedings," whether those words are used or not, and such further proceedings are expected to be "in accordance with" the opinion rendered.'

" * * * These cases hold that under the mandate and the opinion the remandment was a general one. However, in the case of Keaton v. Jorndt, 259 Mo. 179, 168 S.W. 734, the first judgment had been reversed 'for further proceedings to be had therein in conformity with the opinion.' But a reading of the opinion clearly shows the reversal and remandment was with directions. In Prasse v. Prasse, 342 Mo. 388, 115 S.W.2d 807, 809, we said that 'a mandate from an appellate to a trial court has been held to be in the nature of a special or limited power of attorney. By it authority and jurisdiction is granted to the lower court to take such steps as are directed.'

"It follows that whenever an appellate court reverses and remands the judgment of a trial court, the appellate court does so with directions. Those directions are determined from the mandate and the opinion of the appellate court."

In Feinstein v. McGuire, Mo.Sup., 312 S. W.2d 20, 24, the court cited Abrams v. Scott, supra, and said: " * * * and the

opinion had concluded by reversing the finding that foreclosure sale was invalid and had remanded the cause for further proceedings consistent with its opinion, *the mandate was one with directions,* and was not a general remandment, and the trial court was without power to enter judgment vesting title in the foreclosure purchaser without reserving the rights of those interested in the use of the land as a cemetery. * * *

"An examination of the former opinion in this case shows that the judgment was reversed and the cause remanded 'for further proceedings in accordance with the views herein expressed.' The concluding paragraph of the former opinion and the mandate of this court indicate that the judgment of the trial court was set aside—reversed, and the cause remanded without any specific directions to the trial court. Absent any specific directions on such remand, the action being one at law, where the facts were to be determined by a jury or the court sitting as a jury, it would appear that a new trial de novo was contemplated. The words 'for further proceedings in accordance with the views herein expressed' contained no specific directions to the trial court and added nothing to the opinion.

"In the case of Murphy v. Barron, 286 Mo. 390, 228 S.W. 492, 494, this court said: 'The words "for future proceedings in accordance with this opinion" added nothing which would not have been necessarily implied had they been omitted. Every case which is remanded is remanded "for further proceedings," whether those words are used or not, and such further proceedings are expected to be "in accordance with" the opinion rendered.' And see Abrams v. Scott, supra, 211 S.W.2d 718, 721; Adams v. Adams, 350 Mo. 152, 165 S.W.2d 676, 677."

"Accordingly, we must look to other portions of the opinion for any specific directions. * * *"

We are here engaged with procedural rules which govern disposition of a case on appeal so that the lower court may properly be vested with the jurisdiction to carry out the judgment and directions of the appellate court.

 Where the remand of the appellate court is filed in the lower court, the jurisdiction of the lower court reattaches, and, as a general rule, the trial court may make any order or direction in its further progress that is not inconsistent with the decision and directions of the appellate court, and this rule is especially applicable where the mandate recognizes a certain discretion in the lower court. 5B C.J.S. Appeal & Error § 1965, p. 574; Ralph v. Annuity Realty Co., 325 Mo. 410, 28 S.W.2d 662.

A very similar rule is the one that the trial court may consider and decide any matters left open by the mandate of the appellate court. 5B C.J.S. Appeal & Error § 1965, p. 575.

In the instant case the cause was remanded to the Circuit Court of McDonald County for further proceedings to be held herein in accordance with the opinion of the Supreme Court. In the mandate it was stated: "* * * and the Court here being now sufficiently advised of and concerning the premises doth consider and adjudge that the judgment aforesaid, in form aforesaid by the said Circuit Clerk of McDonald County rendered be reversed, annulled and for naught held and esteemed and that the said appellants be restored to all things which they have lost by reason of the said Judgment." Thus, we find that the mandate was one with directions and was not a general remandment, and the trial court was without power to enter judgment except as directed in the judgment of the Supreme Court, to-wit: "The judgment is reversed and cause remanded with directions to the trial court to enter a judgment for plaintiffs."

■ Under the law as set out in this opinion, the mandate refers to the opinion of the Supreme Court and such opinion is a part of such mandate. The mandate from the Supreme Court to the trial court was in the nature of a special or limited power of attorney granting jurisdiction to the lower court to take such steps as are directed. Those directions are determined from the mandate and opinion of the appellate court. Following the law in State ex rel. McGrew Coal Co. v. Ragland, supra, 97 S.W.2d on page 115, we hold that the judgment is plain, definite, certain, and leaves no judicial acts to be done by the court below; and only leaves to the clerk the ministerial duties to file and docket the judgment of the Supreme Court. Curtis v. Fruin-Colnon Contracting Co., Mo. App., 270 S.W.2d 537; Larson v. Crescent Planing Mill Co., Mo.App., 227 S.W.2d 485, 489.

From the record in the instant case we are not advised whether judgment was entered in the trial court, as directed by the mandate and opinion of the Supreme Court. Under the law we must presume that the trial court acted in conformity with its duty under said opinion. However, if said judgment was not entered we still hold that it must be considered as delivered by the court, and, if not recorded, valid as between the parties themselves. 30A. Am. Jur. § 94, p. 226. Appellant admits that respondents have an easement by virtue of the opinion of the Supreme Court. He does not raise the question of the sufficiency of the judgment.

■ Appellant assigns but two alleged errors on the part of the trial court for reversal. First, that it was error to find that the owner of an easement had a right to fence as against the permission and desire of the owner of the fee (servient estate), and, secondly, that error was committed in ruling that the Supreme Court in Dalton v. Johnson, 320 S.W.2d 569, 570, gave respondent the right to fence the easement.

It is hardly necessary to discuss these questions for the reason that an examination of the opinion of the Supreme Court states: "In this action plaintiffs sought an adjudication to the effect that they had acquired an easement by prescription to use a fenced passageway". Thus we think the Supreme Court definitely stated that the easement granted was a *fenced easement*.

In the case cited by Appellant, Stotzenberger v. Perkins, 332 Mo. 391, 58 S.W.2d 983, 987 [6–9] the court stated:

"As the owner of the dominant estate, the defendant has, under our interpretation of the deed, the right to put and maintain the roadway strip in a condition for passage thereon and the right to a free passage on such portions or all of the way as he thinks proper or necessary to make repairs, or for any purpose connected with the enjoyment of his estate; but the plaintiff as owner of the servient estate is under no obligation to maintain or repair. 9 R.C.L. § 51. On the other hand, there remains with plaintiff the right of full dominion and use of the strip except so far as a limitation thereof is essential to the reasonable enjoyment of the dominant easement. Id. 54. That right, being of such an extent, includes the right to fence the strip and to cross it when and where he may please to do so, observing the limitation stated."

This authority in no way sustains appellant's contention because, under the opinion of the Supreme Court, the easement granted was a *fenced easement,* and, under the testimony as set out in the opinion of the Supreme Court, it was necessary for the enjoyment of the easement for the purposes for which it was obtained that it be fenced.

Judgment affirmed.

STONE, P. J., and RUARK, J., concur.